This appeal involves a boundary line dispute between two coterminous landowners. We affirm.
The issue is whether the evidence was sufficient to support a finding that the defendant, Dick Wingard, had, by adverse possession, acquired title to property that is included within the description of the deed held by the plaintiffs, Roy and Mary Garringer.
The facts are as follows: The Magnolia Shores Subdivision was created in the late 1950's. Both the plaintiffs' and the defendant's chain of title originated from the Magnolia Development Company.
The Magnolia Development Company conveyed what is now known as lot 7 to Juliet P. Sykes by deed. The deed, dated August 21, 1958, contained the following description of the property:
 "Beginning at a point 968 feet south and 1057 feet west of the northeast corner of Section 18, Township 11 North, Range 18 East; thence running 102 feet along the right-of-way line of Magnolia Drive to a corner; thence running south 31 [degrees] 15' west 151 feet to a corner; thence running along the shoreline of Magnolia Lake 188 feet to a corner; thence running north 31 [degrees] 15' east 206 feet to the point of beginning. Said lot being in the NE 1/4 of the NE 1/4 of Section 18, Township 11 North, Range 18 East, and containing 0.39 acre, more or less." (C.R. 152-53).
Sykes conveyed the property, referred to in the deed as lot _______ 7, to James and Lucille McKenzie on October 24, 1973. The McKenzies conveyed the property to the plaintiffs on November 21, 1986.
The defendant's chain of title began with Magnolia Development Company's conveyance to Benny and Isophene Jones on May 23, 1961. The description of the property conveyed was as follows:
 "Lot No. 5 in Section A of Magnolia Shores according to a plat recorded in the Records of the Judge of Probate of Crenshaw County, Alabama, according to a survey made by Henry Neil Coleman, engineer, Crenshaw County, Alabama. Said property situated in Tp. 11, R 18, Crenshaw County, Alabama and owned by the Magnolia Development Company, a Corporation." (C.R. 158.)
The Joneses conveyed the property to Wallace and Addie Brightwell on May 29, 1972. The Brightwells owned the lot until 1979, when it was conveyed to the defendant.
The plaintiffs sued the defendant on August 15, 1989. At a nonjury trial, the following testimony was presented: Mrs. Brightwell, one of the defendant's predecessors in title, testified that she erected a fence in 1976 between her lot (# 5) and the plaintiffs' lot (# 7). She testified that the plaintiffs' predecessor never disputed that the fence was the correct boundary line between the lots. One of the plaintiffs' predecessors, Mrs. McKenzie, stated that she never claimed any of the land on Mrs. Brightwell's side of the fence as belonging to her. Both Mrs. Brightwell and Mrs. McKenzie testified that they maintained their respective lots up to the fence. Mrs. McKenzie also testified that she conveyed lot # 7 to the plaintiffs with the boundary line marked by the fence. The defendant testified that when he purchased lot # 5 in 1979 he recognized the fence as the boundary line between the lots.
The trial court, in a nonjury trial, determined that the fence was the boundary line between the two lots and enjoined the plaintiffs from interfering with the fence.
We must first note our standard of review in adverse possession cases where the court hears ore tenus testimony. "[A] judgment establishing a boundary line between coterminous landowners on evidence submitted ore tenus is presumed to be correct and need only be supported by credible evidence. If so supported, the trial court's conclusions will not be disturbed on appeal unless plainly erroneous or manifestly unjust."Tidwell v. Strickler, 457 So.2d 365, 367 (Ala. 1984) (citations omitted). The presumption of correctness is particularly strong in boundary line dispute cases and adverse possession cases because it is difficult for the appellate court to *Page 900 
review the evidence in such cases. Bearden v. Ellison,560 So.2d 1042 (Ala. 1990).
 "There are basically two types of adverse possession; statutory adverse possession, and adverse possession by prescription. Both require the common elements of actual, exclusive, open, notorious, and hostile possession under a claim of right, but the statutory version, which requires possession for only ten years rather than the twenty years required by the prescription version, also requires that the possessor hold under color of of title, have paid taxes on the property for ten years, or have derived his title by descent or devise."
Tidwell, 457 So.2d at 368. In the instant case, where adverse possession is claimed by the coterminous owner, he must prove open, notorious, hostile, continuous, and exclusive possession for 10 years. He need not prove a deed or other color of title to the property, annual listings for taxation, or descent or devise from a predecessor in order to maintain his claim. Id.
The burden of proof is on the party asserting adverse possession. That is, the party asserting the adverse claim must prove actual, hostile, open, notorious, exclusive, and continuous possession for the statutory period. Id.
A fence is an "outstanding symbol of possession."Cockrell v. Kelley, 428 So.2d 622, 624 (Ala. 1983). "When one of the coterminous proprietors builds a fence as the dividing line and occupies and claims to it as such, with knowledge of the other, the claim of the former is presumptively hostile and the possession adverse." Smith v. Brown, 282 Ala. 528, 535,213 So.2d 374 (1968), quoting Hess v. Rudder, 117 Ala. 525,23 So. 136 (1898) (other citations omitted).
Having reviewed the facts in this case, we conclude that the record contains credible evidence that the defendant and his predecessors had been in adverse possession of the property up to the fence line for more than 10 years and that the boundary line between the properties was the fence; therefore, the judgment of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, HOUSTON, KENNEDY and INGRAM, JJ., concur.