These appeals arise from a subrogation action filed by Nationwide Property and Casualty Insurance Company ("Nationwide") concerning moneys it had paid to The Sands Condominium Association, Inc. ("the Association") and to individual condominium owners for damage to, and/or defects in, the Sands Condominium development in Orange Beach.
 I. Facts and Procedural History
The Sands, L.L.C. ("Developer"), entered into a contract with Stuart Construction Company, Inc. ("Stuart"), for Stuart to construct a condominium complex. Upon completion, the units were sold to individuals, who then collectively formed the Association.
Nationwide issued two insurance policies to the Association, and it insured many of the individual condominium units. When Hurricane Danny came across the Alabama Gulf Coast in July 1997, many of the condominiums sustained wind and water damage. Pursuant to the two policies issued to the Association, Nationwide paid claims totaling $347,308.34; it also paid a total of $259,969.12 for covered losses under the various policies issued on the individual condominium units. All claims were paid subject to the payment of each policy's deductible.[1] *Page 371 
On July 30, 1997, the Association filed a lawsuit in the Mobile Circuit Court against Stuart; DPF Architects, P.C.; The Sands, L.L.C.; G.E. Simpson Company, Inc.; K-2, Inc., f/k/a Anthony Industries, Inc.; Arrow Aluminum Industries, Inc.; Jim Booth Contracting Supply, Inc.; and Mobile Glass Company, claiming that these defendant companies had breached warranties and had been negligent and wanton in their construction of The Sands Condominiums.
Nationwide moved to intervene as a plaintiff; the court granted its motion. Nationwide's complaint in intervention contained six counts. In counts one through three, Nationwide asserted a subrogation right as to the moneys it had paid to the Association, and it alleged that Stuart; DPF Architects, P.C.; G.E. Simpson Company, Inc.; K-2, Inc.; Arrow Aluminum Industries, Inc.; Jim Booth Contracting Supply, Inc.; and Mobile Glass Company (collectively referred to as "the Contractors") had breached warranties and had been negligent and wanton in their construction of The Sands Condominiums. Counts four through six of Nationwide's complaint asserted a subrogation right as to the moneys paid pursuant to the policies held by the individual unit owners, and those counts contained the same allegations as counts one through three. In addition to the defendants named above, Nationwide's complaint named the Developer as an additional defendant in the final three counts.
All claims made by the Association in the original complaint were settled and dismissed. The Contractors then moved for summary judgments. As grounds for their motions, the Contractors asserted (1) that Nationwide could not maintain a subrogation action because its insureds had not been "made whole" (contending they had not been "made whole" because they had paid the policy deductibles); (2) that Nationwide's subrogation claims were barred because, they contended, the damage claimed by the Nationwide insureds did not fall within the "covered losses" enumerated in the Nationwide policies, so that Nationwide's payment of the claims had been voluntary; (3) that Nationwide's subrogation claims were barred because of the "waiver-of-subrogation" clause contained within the initial construction contract between the Developer and Stuart; and (4) that Nationwide's claims for subrogation as to the Association assessments were barred because, the Contractors asserted, the insureds lacked standing to recover for those payments. As an additional ground for a summary judgment, K-2, Inc., asserted that it was entitled to a judgment because its product had not been installed correctly; it argued that the incorrect installation eliminated any liability on its part for negligence, wantonness, and breach of warranty. Separately, the Developer argued that it was entitled to a summary judgment on counts four, five, and six of the Nationwide complaint because, it claimed, it was an additional insured under the Nationwide policy issued to the Association, and therefore, could not be sued by the Association's insurer.
Nationwide responded to the motions by asserting (1) that the Contractors had no standing to argue the "made-whole" doctrine, (2) that the issues whether the payments had been made voluntarily and whether the insured's claims were excluded from coverage were jury questions, and (3) that the waiver-of-subrogation clause did not apply because neither the Association nor any individual unit member was a party to the original construction contract between the Developer and Stuart.
The trial court entered a summary judgment for the Contractors, holding that the Nationwide insureds had not yet been *Page 372 
"made whole" because they had paid the applicable deductibles on their policies. However, the court denied the Contractors' summary-judgment motion as it related to the issues whether Nationwide's payments were "voluntary" and whether Nationwide was barred from recovery because of the "waiver-of-subrogation" clause contained in the original construction contract. Further, the court denied K-2's separate summary-judgment motion. Finally, the court entered a summary judgment for the Developer, concluding that Nationwide could not assert a claim against the Developer, which was an additional insured on the Association's policy.[2]
Nationwide appealed from the summary judgment entered in favor of the Contractors. K-2 purported to cross-appeal from the trial court's denial of its separate summary-judgment motion relating to the claims against K-2 alleging liability for breach of warranty, negligence, and wantonness.
 II. Analysis
In its cross-appeal, K-2 argues that the trial court erred in denying its separate summary-judgment motion because, it says, Nationwide failed to present substantial evidence of any negligence, wantonness, or breach of warranty on the part of K-2. Because the denial of K-2's summary-judgment motion is not an appealable order, we do not address the merits of K-2's cross-appeal. See Superskate, Inc. v. Nolen, 641 So.2d 231
(Ala. 1994); see also Ex parte Rizk, 791 So.2d 911 (Ala. 2000). We dismiss that cross-appeal.
Because Nationwide appeals from a summary judgment, our review is de novo. EBSCO Indus., Inc. v. Royal Ins. Co. of America, 775 So.2d 128
(Ala. 2000). We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Jefferson County Comm'n v. ECOPreservation Services, L.L.C., 788 So.2d 121 (Ala. 2000) (quotingBussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988)). Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794,797-98 (Ala. 1989). "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871
(Ala. 1989). In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw. Jefferson CountyComm'n v. ECO Preservation Servs., L.L.C., supra (citing Renfro v.Georgia Power Co., 604 So.2d 408 (Ala. 1992)).
Primarily, Nationwide argues that the trial court erred in entering the summary judgment because, it contends, the Contractors lacked standing to assert a "made-whole" argument. We agree.
Alabama law is clear:
 "[T]he rule making payment a prerequisite to subrogation is for the benefit of the insured. As explained in Aetna Insurance Company v. Hann, [196 Ala. 234, 72 So. 48, 50 (1916)], an insured's *Page 373 
`demand against the wrongdoer must be satisfied so as to relieve him of trouble and risk; and it is this securing of satisfaction by the insured which gives the insurer the right to be subrogated to the rights of the insured against the wrongdoer.'"
Brown Mechanical Contractors, Inc. v. Centennial Ins. Co., 431 So.2d 932,937 (Ala. 1983). Therefore, "the only party with standing to object to the insurer's lack of payment is the insured." Economy Fire Cas. Co.v. Goar, 564 So.2d 867, 868 (Ala. 1990).
The Contractors presented evidence indicating that Nationwide's payments to its insureds (both to the Association and to the individual policyholders) did not make them whole because the payments were subject to the applicable policy deductibles. However, no evidence indicated that the insureds objected to Nationwide's right of subrogation in this action. Without that affirmative showing, or a direct intervention by the insureds, Nationwide was within its contractual rights in pursuing subrogation against the Contractors, and the Contractors were without standing to object. Therefore, the trial court's summary judgment, which was based upon Nationwide's failure to make its insureds whole, is due to be reversed.
1990385 — REVERSED AND REMANDED.
1990492 — DISMISSED.
Hooper, C.J., and Maddox, Houston, See, Johnstone, and England, JJ., concur.
Lyons, J., recuses himself.
[1] The deductible on the Association's policies amounted to $244,118. The Association assessed all individual unit owners $4,500 to assist with the satisfaction of the deductible, and to cover expenses not covered by Nationwide. Additionally, the deductibles on the individual policies issued by Nationwide ranged from $250 to $500.
[2] The summary judgment entered in favor of the Developer was not contested by Nationwide in its arguments to this Court. Therefore, the summary judgment entered in favor of the Developer on this issue stands.