993 So.2d 469 (2008)
SPRINGFIELD MISSIONARY BAPTIST CHURCH
v.
Robert J. WALL and S. Melissa Wall.
2060239.
Court of Civil Appeals of Alabama.
January 25, 2008.
Certiorari Denied March 21, 2008 Alabama Supreme Court 1070689.
*471 Jacqueline E. Austin and J. Pratt Austin-Trucks of Law Offices of Jacqueline E. Uastin, Wetumpka, for appellant.
Susan S. Wagner and D. Keith Andress of Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Birmingham, for appellees.

On Application for Rehearing.
THOMAS, Judge.
This court's opinion of August 31, 2007, is withdrawn, and the following is substituted therefor.
Springfield Missionary Baptist Church ("the church") is located on a parcel of property adjacent to County Road 7 in Millbrook. In November 2005, Robert J. Wall and his wife, S. Melissa Wall, purchased a .61-acre parcel of property located directly to the north of the church's property. Robert began clearing the land in preparation for its use. In January 2006, the church contacted the Walls, contending that Robert had torn down a boundary-line fence and some trees on property owned by the church and demanding payment for the trees. Concerned about the allegation, Robert double-checked the boundary line; he determined that he had not crossed the boundary line and then continued with his clearing and construction activities. The church sued the Walls to quiet title to the disputed property. The Walls answered and filed a counterclaim under the Alabama Litigation Accountability Act ("ALAA"), codified at Ala.Code 1975, § 12-19-270 et seq., alleging that the church's lawsuit was brought without substantial justification.
The Walls then moved for a summary judgment, which the church opposed. On the Walls' motion, the trial court struck the affidavits the church had submitted in opposition to the summary-judgment motion. The trial court then entered a summary judgment in favor of the Walls; the Walls then voluntarily withdrew their ALAA claim. The church appealed to the Alabama Supreme Court, which transferred *472 the appeal to this court, pursuant to Ala.Code 1975, § 12-2-7(6).
In their summary-judgment motion, the Walls argued that the church's deed did not give it title to the disputed strip of land, as the church had alleged in its complaint, and that, even if the church was arguing that the fence the church claimed had been destroyed had encroached onto the Walls' property such that the church could claim adverse possession of a portion of the Walls' property up to that fence, neither of the surveyors who had surveyed the properties and had determined the boundary line had indicated an encroachment of any kind on either survey. The Walls also argued that their property had been "overgrown"[1] and heavily wooded at the time it was purchased in November 2005 and that, because it was in such a condition, no part of it had been susceptible to being used in a manner that could establish adverse possession of any part of the property. The Walls' summary-judgment motion was supported by a copy of a January 2005 survey of the Walls' property; Robert's affidavit; the quitclaim deed conveying the church's property to the church; the affidavit of Gregory M. Gillian, the surveyor who had prepared the January 2005 survey of the Walls' property; the affidavit of W. Darrell Hyatt, the surveyor who had prepared a 1995 survey of the church's property; and the affidavit of Johnie Lary Sadler, who is an elder of the Grandview Pines Church of Christ, which sold the Walls their property in November 2005.
Robert testified in his affidavit that his "property was overgrown and unusable for any purpose in that condition" when he personally walked over the property after he had purchased it in November 2005. According to Robert, he had not seen any encroachments on the property before he began clearing the property and he was surprised when the church accused him of destroying trees and a fence belonging to the church. Robert stated that he had been concerned about the accusation and that he had "rechecked" that he had not crossed the boundary line during his clearing of the property. However, Robert said that he had concluded that he had remained inside the boundaries of his property and that he had had his attorney send a response to that effect to the church.
W. Darrell Hyatt, the surveyor who had prepared a survey of the church's property in 1995, testified in his affidavit that, based on his comparison of his 1995 survey and the 2005 survey performed by Gregory M. Gillian, the boundary line between the church's property and the Walls' property differed only by inches and that the 2005 survey actually allotted the church a few more inches of the property than did the 1995 survey. Hyatt stated that he did not recall seeing any encroachments on the Walls' property when he surveyed the church's property in 1995. He further testified that he had walked over the Walls' property in 2005 before it was cleared and "did not see any encroachments or any marks that would indicate a property line being claimed that was not the line as specified by the earlier surveys."
Johnie Lary Sadler testified that he was an elder of Grandview Pines Church of Christ and that that church had sold the Walls their property in 2005. Sadler said that the Grandview Pines Church had purchased the property in the late 1980s and that, since that time, he had walked over *473 the property several times. Sadler described the Walls' property before its sale to the Walls as "overgrown and heavily wooded up to the property lines drawn in the boundary survey of Gregory M. Gillian, dated January 27, 2005." Sadler further stated that "it would have been impossible... to actively use the land in the condition it was in prior to the sale to Mr. Wall." Finally, Sadler noted that the church had offered to purchase the property from the Grandview Pines Church "several years ago."
The church responded to the Walls' summary-judgment motion, arguing that the fence that the Walls had destroyed had served as a boundary line between the two properties. The church further argued that the church had, in fact, used the property up to the fence as a parking lot and that it had used the area up to the fence for more than 60 years, thus establishing adverse possession of the disputed "strip." In support of their opposition to the Walls' summary-judgment motion, the church submitted the affidavits of three long-time church members: Queen Pierce, James Smith, and Fannie Smith.[2]
The affidavits of James Smith and Fannie Smith are virtually identical. They state that James Smith and Fannie Smith have been members of the church since 1928 and 1934, respectively. Both affidavits state that the church has claimed ownership of the property encompassed by the legal description set out in the 1995 survey by Hyatt. They further state that the church "ha[d] been in the continuous, actual, open, notorious, adverse, peaceful, and exclusive possession of this property claiming to own the same all of my lifetime." James Smith states that "[t]he church has been in continuous, actual, open, notorious, and peaceful possession of said land from at least the year 1928 to the present time," while Fannie Smith states the same, except that the date 1928 has been replaced by the date 1934. Regarding the fence, James Smith states that it "ha[d] been located on the property at least 50 years," while Fannie Smith says that the fence "ha[d] been located on the property as long as I can remember."
The church submitted a second affidavit executed by Fannie Smith in opposition to the Walls' motion for a summary judgment. The second Fannie Smith affidavit states only that the church has been in its present location for over 20 years and that Fannie has been a member of the church for over 20 years.
Unlike the affidavits of James Smith and Fannie Smith, Queen Pierce's affidavit does not contain the legal description of the church's property. She does, however, state that "the church has been in the continuous, actual, open, notorious, adverse, peaceful, and exclusive possession of the strip of land in question as long as [I] can remember." Pierce states that she joined the church in 1936 and that she is on the Board of Directors of the church. She testifies that "the old fence that was removed by [the Walls] had been in place as long as [I] can remember and served as the boundary line." According to Pierce, "the church parking lot went all the way to the fence line." Pierce further says that she had walked the boundary line marked by the fence numerous times.
*474 As noted above, the Walls moved to strike, and the trial court did strike, the affidavits submitted by the church in opposition to the Walls' summary-judgment motion. The basis of the Walls' motion to strike was that the affidavits were conclusory, i.e., that they only stated conclusions regarding adverse possession instead of making statements of fact that would support a conclusion that the church had adversely possessed the disputed property. See, generally, Ex parte Wood, 852 So.2d 705, 711-12 (Ala.2002) (reversing a summary judgment in favor of a state agent on immunity grounds because the state agent's affidavit failed to state any facts that would establish his entitlement to immunity and instead only stated the conclusion that his duties were such that immunity would apply). In its judgment, the trial court indicated that it was striking the affidavits because they failed to adequately describe the fence and because the affiants failed to testify that they were familiar with the legal boundary line of the property. The trial court's judgment, in addition to striking the affidavits, determined that the church had failed to provide substantial evidence of an encroachment on the Walls' property. On appeal, the church argues that it presented substantial evidence creating a genuine issue of material fact and, thus, presented sufficient evidence to preclude the entry of the summary judgment; it further argues that the trial court should not have stricken the affidavits it had submitted in opposition to the Walls' summary-judgment motion.
We review a summary judgment de novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Rule 56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, "the burden then shifts to the nonmovant to rebut the movant's prima facie showing by `substantial evidence.'" Lee, 592 So.2d at 1038 (footnote omitted). "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d). Furthermore, when reviewing a summary judgment, the appellate court must view all the evidence in a light most favorable to the nonmovant and must entertain all reasonable inferences from the evidence that a jury would be entitled to draw. See Nationwide Prop. & Cas. Co. v. DPF Architects, P.C., 792 So.2d 369, 372 (Ala.2000); and Fuqua v. Ingersoll-Rand Co., 591 So.2d 486, 487 (Ala.1991).
The law concerning adverse possession by a conterminous landowner is well settled:
"[I]n Alabama there are basically two types of adverse possession; statutory adverse possession, and adverse possession by prescription. Both require the common elements of actual, exclusive, open, notorious, and hostile possession under a claim of right, but the statutory version, which requires possession for only ten years rather than the twenty years required by the prescription version, also requires that the possessor hold under color of title, have paid taxes on the property for ten years, or have derived his title by descent or devise. Code 1975, § 6-5-200. Downey v. North Alabama Mineral Development *475 Co., 420 So.2d 68 (Ala.1982). However, in cases like the present one, where adverse possession is claimed by a conterminous owner, the three latter requirements do not apply. Thus, a conterminous landowner ... must prove open, notorious, hostile, continuous, and exclusive possession for only ten years. He need not prove either a deed or color of title to the property, annual listings for taxation, or descent or devise from a predecessor in order to maintain his claim. Mardis v. Nichols, 393 So.2d 976 (Ala.1981)."
Tidwell v. Strickler, 457 So.2d 365, 368 (Ala.1984); see also Garringer v. Wingard, 585 So.2d 898, 900 (Ala.1991); and Carpenter v. Huffman, 294 Ala. 189, 191, 314 So.2d 65, 67 (1975) (applying the predecessor statute to § 6-5-200).[3]
We must first address whether the trial court properly struck the affidavits of James Smith, Fannie Smith, and Queen Pierce. Rule 56(e), Ala. R. Civ. P., governs the form of affidavits submitted in support of or in opposition to a summary-judgment motion. The rule provides, in pertinent part: "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." In their brief on appeal, the Walls argue that the conclusory statements in the four affidavits submitted by the church made the affidavits inadmissible.
We agree that the statements in each of the three affidavits indicating that the church had been "in the continuous, actual, open, notorious, adverse, peaceful, and exclusive possession" of the land in question for any length of time are inadmissible because they are conclusions and fail to state facts that would establish that the church had actually been in continuous, actual, open, notorious, peaceful, and exclusive possession of the disputed strip of property. See Ex parte Wood, 852 So.2d at 711-12. However, we cannot agree that all three affidavits are inadmissible in their entirety because of the conclusory statements therein.
A large part of the remainder of the affidavits of James Smith and Fannie Smith indicate that the church has claimed ownership of the property encompassed by the legal description contained in the 1995 survey, a fact that is not relevant to whether the church has adversely possessed a portion of the Walls' property. After the conclusory portions are stricken and the portion concerning the church's *476 ownership of its own parcel is ignored as irrelevant, the two affidavits only serve to establish that an old fence had been in existence for at least 50 years or "as long as [Fannie Smith] can remember." Thus, standing alone, those affidavits do not assist the church in meeting its burden of creating a genuine issue of material fact regarding its claim that it had adversely possessed a portion of the Walls' property between the boundary line and the old fence. Fannie Smith's second affidavit, which states only that the church has been in existence at its present location for more than 20 years and that Fannie has been a member of the church for more than 20 years, does not assist the church in meeting its burden either.
Pierce's affidavit contains more factual assertions than either James Smith's affidavit or Fannie Smith's affidavit. In Pierce's affidavit, she states the following facts: that an old fence had been removed by the Walls, that the church had used the portion of the property up to the old fence for a parking lot, and that the old fence had been considered the boundary line of the property. Because those facts are the type of facts that, if proven, might assist in establishing adverse possession, those portions of Pierce's affidavit are admissible.
We now turn to the question whether the church's evidence, and more particularly Pierce's affidavit, created a genuine issue of material fact that would preclude the entry of a summary judgment in the Walls' favor. The trial court focused on the failure of each affiant to testify that they were aware of the location of the legal boundary line of the church's property. The Walls attack Pierce's affidavit on the basis that she failed to testify that the fence was actually located on the Walls' property. Both the trial court and the Walls, then, are concerned with whether the evidence submitted by the church provided substantial evidence that the fence was located on the Walls' property and not on the church's property.
Indeed, as the Walls argue, Pierce's affidavit does not explicitly state that she was aware of the legal boundary line of the church's property or that the fence was actually located on the Walls' property. However, when reviewing a summary judgment, we must consider all the evidence of record in the light most favorable to the nonmovant, here the church, and we must consider the inferences that a jury would be entitled to draw from all the evidence. Nationwide Prop. & Cas. Co., 792 So.2d at 372; and Fuqua, 591 So.2d at 487.
"An inference is a deduction of fact that reasonably may be drawn from another fact or group of facts. It is in the very nature of inductive, as opposed to deductive, reasoning that the same premise, or set of premises, will give rise to more than one inference, each of which is logically compatible with the initial premise or premises. Merely because the same factual premise will support more than one inference does not of itself render the proffered evidence conjectural or speculative. Indeed, inferences may be of greater or lesser persuasion even though, as a matter of strict logic, they may all follow rationally from the same premise.
"It is only where evidence points equally to inferences both favorable and unfavorable to the moving party that it lacks probative value; and its use to support one inference more than another, when in fact it will support both with equal plausibility, becomes mere conjecture and speculation. But where evidence reasonably tends to support inferences favorable to the moving party, more than those unfavorable to that party, *477 such evidence has probative value and is not conjecture or speculation."
Roberts v. Carroll, 377 So.2d 944, 947 (Ala. 1979) (discussing inferences in determining whether the entry of a directed verdict was proper). See also Turner v. Azalea Box Co., 508 So.2d 253, 254 (Ala.1987) (citing Roberts and holding that certain evidence presented in support of and in opposition to a summary-judgment motion was insufficient under the former "scintilla" standard because it equally supported two inferences and was thus no more than speculation and conjecture).
A review of the evidence of record with these standards in mind indicates that when he cleared his property Robert tore down a fence that the church claims had been used as a boundary-line marker between the Walls' property and the church's property. Because the Walls maintain that they did not cross the boundary line when clearing the property, the evidence permits an inference that the fence was actually located on the Walls' property; however, it also equally permits an inference that the fence was located on the boundary line between the properties. Thus, at best, one could only speculate or guess whether or not the fence was located on the Walls' property.
As has been often repeated, "evidence which affords nothing more than mere speculation, conjecture, or guess is wholly insufficient to warrant submission of the case to the jury." Roberts, 377 So.2d at 946; and Turner, 508 So.2d at 254. Because the evidence presented in support of and in opposition to the Walls' summary-judgment motion equally permits two reasonable inferences, one in favor of the Walls and one in favor of the church, it fails to create a genuine issue of material fact warranting the submission of the case to a jury. We therefore affirm the summary judgment entered in favor of the Walls.
APPLICATION GRANTED; OPINION OF AUGUST 31, 2007, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
BRYAN and MOORE, JJ., concur.
PITTMAN, J., dissents, with writing, which THOMPSON, P.J., joins.
PITTMAN, Judge, dissenting.
Because I believe our decision to reverse the trial court's summary judgment in favor of the Walls on original deliverance was correct, I would overrule the application for rehearing; therefore, I respectfully dissent from the grant of rehearing and from the substituted opinion affirming the trial court's judgment.
THOMPSON, P.J., concurs.
NOTES
[1] The verb "overgrow," which is the root word of "overgrown," is defined as "to grow over so as to cover with herbage." Merriam-Webster's Collegiate Dictionary 884 (11th ed. 2003). Presumably, the Walls were asserting that the property was overgrown with vegetation at the time they purchased it.
[2] The church also submitted an "Application for Service and Unmetered Outdoor Lighting Service Agreement" between the church and Alabama Power Company. Because it appears from one of the surveys in the record that the power pole is located in the county right-of-way adjoining the church's property, we fail to see the relevance of this particular exhibit to establishing that the church has adversely possessed a portion of the Walls' property.
[3] The trial court, relying on Moss v. Woodrow Reynolds & Son Timber Co., 592 So.2d 1029, 1030 (Ala. 1992), indicated in its judgment that, in addition to the typical elements of adverse possession, the church was also required to demonstrate that it had held the disputed property under color of title, that it had paid taxes on the property for 10 years, or that it derived its title to the disputed property by descent or devise. However, the quotation in Moss containing those three requirements comes directly from Tidwell and fails to include the portion of Tidwell quoted above explaining that the three requirements of § 6-5-200 do not apply to coterminous landowners seeking to establish a boundary line. The Moss court did not base its affirmance of the summary judgment against the party seeking to establish adverse possession in that case, Moss, on his failure to prove one of the three requirements of § 6-5-200, and, in fact, it did not again mention those three requirements when discussing Moss's burden of proof. The trial court in the present case bases its summary judgment on the failure of the church to create a genuine issue of fact relating to whether it owned or adversely possessed the land up to the fence on the Walls' property; therefore, we conclude that the trial court did not erroneously apply Moss so as to enter a summary judgment on the basis of the church's failure to establish one of the three requirements set out in § 6-5-200.