Rel: January 10, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

————————————————

### SC-2024-0226

————————————————

**Betty Callens**

**v.**

**Episcopal Foundation of Jefferson County d/b/a St. Martin's In-The-Pines**

**Appeal from Madison Circuit Court**
**(CV-21-902704)**

MENDHEIM, Justice.

Betty Callens appeals from the Jefferson Circuit Court's summary

judgment entered against her and in favor of the Episcopal Foundation

of Jefferson County d/b/a St. Martin's In-The-Pines ("St. Martin's") concerning Callens's claims of negligence, wantonness-willfulness, battery, and medical malpractice. We affirm.

## I. Facts

At the time of the events in question, Callens was 81 years old. On September 23, 2019, Callens had a left-hip-replacement surgery, also known as an arthroplasty, at Grandview Medical Center ("Grandview"). The surgery was performed by Dr. Dewey Jones IV. There were no complications with the surgery, and Callens was discharged from Grandview on September 27, 2019, to Brookdale Skilled Nursing Facility ("Brookdale") for rehabilitation. In her complaint, Callens alleged that she was subjected to extremely poor nursing care at Brookdale.

"13. While at Brookdale, Callens was forced to urinate in diapers and change them herself while lying in bed. She could not get anyone to bring her water or pain medication.

"….

"18. In or around October 3, 2019, Callens had to use the bathroom late during the night. Callens tried to alert Brookdale's staff on duty by pressing the help button located on her bed. Callens pressed the 'help' button continuously for approximately twenty (20) minutes.

"19. Callens was never assisted by a Brookdale employee.

2

"20. Callens was forced to get herself out of bed to go to the bathroom without assistance from a Brookdale employee."

Callens slipped and fell in the bathroom, allegedly due to water on the bathroom floor, and she sustained another fracture of her left hip as well as a fractured left femur.

In the early morning on October 4, 2019, Callens was again transported to Grandview. On October 7, 2019, Callens underwent an open reduction and internal fixation or "ORIF" of her left intertrochanteric region of the femur. On October 8, 2019, Callens received a closed reduction of the left-hip dislocation.[1] During her stay at Grandview, Callens was diagnosed with Clostridioides difficile ("C. diff."), which caused her to lose weight and to contract several urinary-tract infections. On October 15, 2019, Callens was discharged from Grandview to St. Martin's for rehabilitation.

---

[1]In its brief to this Court, St. Martin's asserts that the hip dislocation occurred "in the absence of any known trauma following [Callens's] surgery on October 7, 2019." St. Martin's brief, p. 7. Callens's medical records do not directly support that assertion.

In her complaint, Callens alleged that the following incident occurred on October 21, 2019, while she was receiving treatment and being bathed by a St. Martin's nurse as Callens was lying in her bed:

"46. The nurse rolled Callens on her side to clean her backside.

"47. The nurse began to poke, push, and prod on Callens's left hip which was healing from surgery.

"48. The nurse kept poking, pushing, and prodding with more and more pressure.

"49. Callens told the nurse that she was applying too much physical exertion on her healing hip and asked her to stop.

"50. The St. Martin's nurse said, 'Hush, shut up, be quiet.' 'We are trying to clean you up.'

"51. Callens responded by saying, 'Stop, you are breaking my hip!'

"52. The St. Martin's nurse did not stop and applied enough pressure that Callens felt and heard a 'pop' in her hip.

"53. The pop was extremely loud and startled the nursing staff.

"54. Callens was in a tremendous amount of pain and briefly lost [consciousness].

"55. An X-Ray technician came to Callens's room to conduct X-Rays of her hip.

4

"56. However, the St. Martin's technician told Callens, 'We are doing X-Rays of your stomach.'"

The X-rays revealed that Callens had suffered another left-hip dislocation, described as an "[a]cute left femoral dislocation." At that point, Callens was again transported to Grandview.

On September 18, 2021, Callens commenced an action in the Jefferson Circuit Court against Brookdale and St. Martin's. Callens asserted claims of negligence, wantonness-willfulness, battery, and medical malpractice against St. Martin's and claims of negligence against Brookdale. St. Martin's answered Callens's complaint on October 18, 2021. Brookdale answered her complaint on October 20, 2021.

On February 24, 2023, Brookdale filed a summary-judgment motion. On March 13, 2023, St. Martin's filed a summary-judgment motion. In that motion, St. Martin's argued that a summary judgment was appropriate because Callens had failed to submit any medical-expert testimony regarding a breach of the standard of care or medical causation of her injuries. St. Martin's also contended that its "care and treatment of [Callens] was in accordance with the standard of care." In support of that latter proposition, St. Martin's submitted an affidavit from Michael Britton, R.N. Britton testified that he had been a "licensed Registered

Nurse … since March 20, 1991, through the present time" and that he had

> "worked in long term care providing hands on care to residents such as Betty Callens since March 20, 1991. At the time of Ms. Callens's residency specifically, I worked as a Director of Nursing in a long-term care facility and provided hands on care at that facility. I also worked in long-term care as a nurse providing hands on care to residents of nursing homes in the years preceding and following the time of Ms. Callens's residency at St. Martin's.
>
> "….
>
> "5. I have extensive experience providing and overseeing the type of medical care and treatment that St. Martin's provides to residents like Ms. Callens. This experience includes, but is not limited to, providing and overseeing care for rehabilitation residents like Ms. Callens for many years prior to Ms. Callens's admission to St. Martin's, while she was a resident at St. Martin's, and after she was a resident at St. Martin's."

Britton stated that he had "reviewed the medical records related to the care and treatment provided by St. Martin's to Ms. Callens, including, but not limited to, Ms. Callens's St. Martin's medical charts." He concluded:

> "6. Based on my education, training, and years of experience as a nurse, I am familiar with the standard of care to be exercised by skilled and rehabilitation staff, including nurses and certified nursing assistants in 2019 when providing medical care and treatment to residents like Ms. Callens. It is my opinion, based on my education, training,

experience, [and] knowledge about the applicable standard of care, and review of Ms. Callens's St. Martin's records, that the care and treatment St. Martin's provided to Ms. Callens was reasonable, appropriate, and met the applicable standard of care."

On March 31, 2023, Callens filed a response in opposition to Brookdale's summary-judgment motion. Brookdale filed a reply to Callens's response on April 4, 2023. Also on March 31, 2023, Callens filed a response in opposition to the summary-judgment motion filed by St. Martin's. In that response, Callens argued that her injuries were not complex in nature and that, therefore, she did not believe that medical-expert testimony was required to establish the standard of care or "[t]he causative relationship between" her injuries and the acts or omissions of St. Martin's employees.

On April 4, 2023, Callens filed a motion to strike the affidavit of Britton that St. Martin's had submitted in support of its summary-judgment motion. Citing excerpts from Britton's deposition, Callens contended that there was an issue of fact as to whether Britton had practiced in the same discipline or school of practice during the year preceding the date of the alleged breach of the standard of care. Callens argued that doubt about whether Britton actually had cared for patients

in the year preceding when Callens sustained her injuries meant that "his affidavit should be stricken and he should be disqualified from testifying as an expert witness."

On the following day, April 5, 2023, St. Martin's filed a response to the motion to strike in which it contended that Callens had "completely ignore[d] the testimony of Mr. Britton himself in which he testified that he provided hands on care to residents in nursing homes."

On April 12, 2023, the circuit court entered an order in which it denied Brookdale's summary-judgment motion. On the same date, the circuit court entered an order in which it granted the summary-judgment motion filed by St. Martin's; that order did not explain the circuit court's reasoning for its decision. Also on April 12, 2023, the circuit court entered an order denying Callens's motion to strike the affidavit submitted by Britton.

On May 24, 2023, Callens filed her first notice of appeal. However, on August 9, 2023, this Court's Clerk's Office issued an order pursuant to Foster v. Greer & Sons, Inc., 446 So. 2d 605 (Ala. 1984), in which it notified the circuit court that Callens's claims against Brookdale appeared to remain pending before the circuit court and, therefore, that

8

Callens had not appealed from a final judgment. Accordingly, the case was remanded to the circuit court to take one of the following actions within 14 days: (1) to enter a Rule 54(b), Ala. R. Civ. P., order or (2) to adjudicate the pending claims against Brookdale. If no action was taken within the given period, the remand order stated, the appeal would be dismissed. On September 15, 2023, the Clerk's Office issued an order observing that this Court had received no response to the May 24, 2023, remand order, and so Callens's appeal was dismissed for lack of jurisdiction because it arose from a nonfinal judgment.

On January 19, 2024, Callens and Brookdale informed the circuit court that those parties had reached a settlement agreement. Subsequently, on February 12, 2024, Callens and Brookdale filed a "Joint Stipulation of Dismissal" that requested a dismissal of Callens's claims against Brookdale. On February 28, 2024, the circuit court entered an order dismissing, with prejudice, Callens's claims against Brookdale.

On the same date, February 28, 2024, the circuit court entered a final order disposing of Callens's claims against St. Martin's based on its previous determination that St. Martin's was entitled to a summary judgment. On April 9, 2024, Callens appealed.

9

## II. Standard of Review

"We review a summary judgment de novo. Potter v. First Real Estate Co., 844 So. 2d 540, 545 (Ala. 2002) (citing American Liberty Ins. Co. v. AmSouth Bank, 825 So. 2d 786 (Ala. 2002)).

> "'"We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. 'Substantial evidence' is 'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw."'

"844 So. 2d at 545 (quoting Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C., 792 So. 2d 369, 372 (Ala. 2000)) (citations omitted).

"Summary judgment is appropriate only when there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P."

Hooper v. Columbus Reg'l Healthcare Sys., Inc., 956 So. 2d 1135, 1139 (Ala. 2006).

10

### III. Analysis

Callens presents two arguments in seeking a reversal of the circuit court's summary judgment in favor of St. Martin's. First, Callens argues that she was not required to present medical-expert testimony to establish a breach of the standard of care or the causation of her injuries because, she says, "[t]he care … which Callens received at St. Martin's was routine custodial care not involving complex medical procedures or care." Callens's brief, p. 9. In making that argument, Callens seeks to take refuge in the so-called "layman" exception that sometimes applies in medical-malpractice cases.

> " 'To maintain a medical-malpractice action, the plaintiff ordinarily must present expert testimony from a "similarly situated health-care provider" as to (1) "the appropriate standard of care," (2) a "deviation from that standard [of care]," and (3) "a proximate causal connection between the [defendant's] act or omission constituting the breach and the injury sustained by the plaintiff." Pruitt v. Zeiger, 590 So. 2d 236, 238 (Ala. 1991) (quoting Bradford v. McGee, 534 So. 2d 1076, 1079 (Ala. 1988)). The reason for the rule that proximate causation must be established through expert testimony is that the issue of causation in a medical-malpractice case is ordinarily "beyond 'the ken of the average layman.' " Golden v. Stein, 670 So. 2d 904, 907 (Ala. 1995), quoting Charles W. Gamble, McElroy's Alabama Evidence, § 127.01(5)(c), p. 333 (4th ed. 1991). The plaintiff

11

must prove through expert testimony "that the alleged negligence 'probably caused the injury.'" McAfee v. Baptist Med. Ctr., 641 So. 2d 265, 267 (Ala. 1994).'

"Lyons v. Walker Reg'l Med. Ctr., 791 So. 2d 937, 942 (Ala. 2000). It is well settled that there is an exception to the rule requiring expert testimony '"in a case where want of skill or lack of care is so apparent ... as to be understood by a layman, and requires only common knowledge and experience to understand it."' Tuscaloosa Orthopedic Appliance Co. v. Wyatt, 460 So. 2d 156, 161 (Ala. 1984) (quoting Dimoff v. Maitre, 432 So. 2d 1225, 1226-27 (Ala. 1983)); see also Anderson v. Alabama Reference Labs., 778 So. 2d 806 (Ala. 2000).

"The following situations have been recognized as exceptions to the general rule that the plaintiff in a medical-malpractice action must proffer independent expert medical testimony:

"'"(1) where a foreign instrumentality is found in the plaintiff's body following surgery; 2) where the injury complained of is in no way connected to the condition for which the plaintiff sought treatment; 3) where the plaintiff employs a recognized standard or authoritative medical text or treatise to prove what is or is not proper practice; and 4) where the plaintiff is himself or herself a medical expert qualified to evaluate the doctor's allegedly negligent conduct."'

"Allred v. Shirley, 598 So. 2d 1347, 1350 (Ala. 1992) (quoting Holt v. Godsil, 447 So. 2d 191, 192-93 (Ala. 1984) (citations

12

omitted in <u>Allred</u>)); see also <u>Anderson v. Alabama Reference Labs.</u>, supra.

"In <u>Ex parte HealthSouth Corp.</u>, 851 So. 2d 33 (Ala. 2002), this Court explained that <u>the list of exceptions</u> in <u>Allred</u> to the general rule requiring expert testimony <u>was illustrative and not exclusive</u>. The Court went on to explain that the first two examples were related to those categories of cases in which the lack of skill is so apparent as to be understood by a layperson and required only common knowledge and experience to understand it. The Court noted that the third and fourth examples set out in the list of exceptions had nothing to do with evidence within the common knowledge of the jury, because those exceptions to the rule requiring the proffer of expert testimony are where an authoritative treatise is offered or the plaintiff is a medical expert qualified to evaluate the health-care provider's allegedly negligent conduct.

"The <u>HealthSouth</u> Court went on to 'reformulate' the exceptions to the general rule requiring expert testimony in medical-malpractice actions as follows:

"'[T]o recognize first, a class of cases "'where want of skill or lack of care is so apparent ... as to be understood by a layman, and requires only common knowledge and experience to understand it,'" [<u>Tuscaloosa Orthopedic Appliance Co. v.</u>] <u>Wyatt</u>, 460 So. 2d [156] at 161 [(Ala. 1984)] (quoting <u>Dimoff v. Maitre</u>, 432 So. 2d 1225, 1226-27 (Ala. 1983)), such as when a sponge is left in, where, for example, the wrong leg is operated on, or, as here, where a call for assistance is completely ignored for an unreasonable period of time. A second exception to the rule requiring expert testimony applies when a plaintiff relies on "'"a recognized standard or authoritative medical text or treatise,"'" <u>Anderson</u> [v. <u>Alabama</u>

13

Reference Labs.], 778 So. 2d [806] at 811 [(Ala. 2000)], or is himself or herself a qualified medical expert.'

"851 So. 2d at 39. The Court's reformulation of categories in HealthSouth essentially clarifies the exceptions to the general rule requiring expert testimony in medical-malpractice actions by emphasizing in the first exception as reformulated that there are situations where the lack of skill is so apparent as to be understood by a layperson, thereby requiring only common knowledge and experience to understand it, and that further the list of examples of such situations was not exhaustive but merely set out examples of possible situations. In the second exception as reformulated, the Court simply combines the use of an authoritative treatise and the plaintiff's own testimony as a medical expert as the second exception to the general rule."

Collins v. Herring Chiropractic Ctr., LLC, 237 So. 3d 867, 870-71 (Ala. 2017) (footnote omitted; emphasis added).

Essentially, Callens argues that the lack of skill exhibited by nurses at St. Martin's in caring for her was so apparent that only common knowledge and experience was necessary to understand it. As Callens puts it:

"Quite literally, a staff member was wiping Callens's backside and pushing on her hip that was operated on twice within days of each other at Grandview Hospital. Callens repeatedly tells [the nurse from] St. Martin's to stop pushing on her hip because it was going to break again, [a] St. Martin's staff member repeatedly tells [Callens] to 'hush,' and her fragile 81-year-old hip is reinjured for the third time within days of the first surgery."

14

Callens's brief, p. 9.

Callens likens the circumstances in her case to the situation presented in Ex parte HealthSouth Corp., 851 So. 2d 33 (Ala. 2002):

> "In HealthSouth, the plaintiff was receiving inpatient rehabilitation after back surgery. She was placed in a bed with rails and was instructed not to get up without assistance from a nurse. While in bed, the plaintiff needed to use the restroom and rang for the nurse. The plaintiff waited between 30 minutes and an hour, but the nurse did not come. Unable to wait any longer, the plaintiff tried to get up on her own. When she placed weight on her left leg, it gave way and she fell, fracturing her hip. This Court held that expert testimony was unnecessary to establish that the nurse breached the standard of care ...."

McGill v. Szymela, 330 So. 3d 453, 461 (Ala. 2020) (plurality opinion). Callens also notes the distinction made in HealthSouth between medical care and custodial care:

> "'"Courts generally make a distinction between medical care and custodial care or routine hospital care. The general rule is that a hospital must in the care of its patients exercise such ordinary care and attention for their safety as their mental and physical condition, known or should have been known, may require.... If the patient requires professional nursing or professional hospital care, then expert testimony as to the standard of that type of care is necessary.... But it does

15

> not follow that the standard of all care and attention rendered by nurses or by a hospital to its patients necessarily require proof by expert testimony. <u>The standard of nonmedical, administrative, ministerial or routine care in a hospital need not be established by expert testimony because the jury is competent from its own experience to determine and apply such a reasonable-care standard</u>."'
>
> "<u>McGraw [v. St. Joseph's Hospital</u>], 200 W. Va. [114,] 121, 488 S.E.2d [389,] 396 [(1997)] (quoting <u>Cramer v. Theda Clark Memorial Hospital</u>, 45 Wis. 2d 147, 149-50, 172 N.W.2d 427, 428 (1969) (citations omitted) ([second] emphasis added in <u>McGraw</u>)). In this case, the nurse's responsibility to respond to Heath's call for assistance clearly falls within the category of routine hospital care. A jury could use 'common knowledge and experience' to determine whether the standard of care was breached in this case, where custodial care, not medical care, is at issue."

851 So. 2d at 39 (first emphasis added). Callens contends that the nurses at St. Martin's were dispensing custodial care, not medical care, when she sustained her injuries.

Callens's argument has a surface appeal to it. The problem is that, as St. Martin's observes, Callens was not an "ordinary" patient. St. Martin's brief, p. 19. As the rendition of facts relates, Callens had a left-hip-replacement surgery on September 23, 2019. Then, on October 3, 2019, while Callens was at Brookdale, she slipped and fell in the

bathroom and broke her left hip again, as well as her left femur. On October 7 and 8, 2019, Callens underwent surgery to help repair her broken hip and broken leg. She was also diagnosed with C. diff., which caused Callens to have further medical issues. It was in that condition that Callens arrived at St. Martin's. Dr. Jones, Callens's surgeon, had advised St. Martin's that Callens was permitted to put as much weight as she was comfortable with on her left leg but that St. Martin's should "maintain anterior and posterior hip precautions and [have Callens] wear [a] long leg immobilizer in bed and for transfers."[2]

As St. Martin's notes, "[t]here is nothing routine about turning and repositioning a patient like Callens." St. Martin's brief, p. 20. Callens herself testified that the St. Martin's nurses were bathing her backside. Doing so required repositioning Callens while Callens wore the long leg immobilizer. Performing such tasks for a patient with Callens's conditions required the nurses to employ certain techniques and care. Such techniques and care are not within the knowledge and experience

---

[2]St. Martin's observes that, in her deposition, St. Martin's physical therapist Christi Espy testified that a long leg immobilizer is "'a Velcro brace that keeps the knee straight, and it goes from the hip to the ankle, with -- [Callens] did not have a knee injury, but it is used to help maintain a hip precaution.'" St. Martin's brief, p. 19 n.8.

of an ordinary layperson. The mere fact that Callens, in her fragile condition, was injured in the course of the care and treatment being given to her by the St. Martin's nurses does not, by itself, constitute substantial evidence of medical negligence. See, e.g., Watterson v. Conwell, 258 Ala. 180, 183, 61 So. 2d 690, 692 (1952) ("A showing of an unfortunate result does not raise an inference of culpability.").

Callens's argument amounts to contending that the St. Martin's nurses simply should have been gentler while they bathed her, but that assumes what kind of care was required to complete the tasks being performed by the St. Martin's nurses. What position did Callens need to be in to properly perform a bath? How much pressure needed to be, and could be, applied to Callens's fragile body in order to clean her? Did the long leg immobilizer require a different technique than ordinarily would be employed for bathing a patient's backside? Those are just some of the questions that the common knowledge and experience of a layman cannot answer. In short, expert testimony was required to illuminate whether the St. Martin's nurses should have performed the care and treatment being given to Callens in a different manner and whether such differences would have prevented Callens from sustaining another injury

to her left hip. Callens failed to present expert testimony that would establish the standard of care required to be provided by St. Martin's nurses and that would establish "'a proximate causal connection between the [health-care provider's] act or omission constituting the breach and the injury sustained by the plaintiff.'" Rivard v. University of Alabama Health Servs. Found., P.C., 835 So. 2d 987, 988 (Ala. 2002) (citation omitted). Therefore, the circuit court did not err in entering a summary judgment in favor of St. Martin's.

Even though the foregoing conclusion constitutes a sufficient ground to affirm the circuit court's judgment, we will, nonetheless, address Callens's second argument. Callens contends that the circuit court erred in denying her motion to strike the affidavit of Britton, the medical expert who testified on behalf of St. Martin's. Specifically, Callens argues that Britton did not qualify as a similarly situated health-care provider. Callens relies upon § 6-5-548(b), Ala. Code 1975, which defines a "similarly situated health care provider" as

"one who meets all of the following qualifications:

"(1) Is licensed by the appropriate regulatory board or agency of this or some other state.

19

"(2) Is trained and experienced in the same discipline or school of practice.

"(3) Has practiced in the same discipline or school of practice during the year preceding the date that the alleged breach of the standard of care occurred."

Callens does not dispute that Britton meets the first two elements of the foregoing definition. She argues that "[t]he trial court record was not clear as to whether Britton had practiced in the same discipline or school of practice during the year preceding Callens's injuries at St. Martin's." Callens's brief, p. 23. Callens says the record is unclear because Britton was hired by St. Martin's in September 2021 as "Administrator and Chief Operating Officer," which, she says, is an administrative position. Callens then speculates that Britton's previous position as "Director of Nursing" at a long-term care facility -- during the year preceding Callens's injuries -- also must have primarily involved administrative duties. However, Callens's speculation does not create an issue of fact with respect to Britton's qualifications as a similarly situated health-care provider.

Moreover, Callens is simply incorrect that the record was unclear concerning whether Britton had practiced as a registered nurse during

the year that preceded the acts that Callens alleges caused her injuries. Britton's affidavit unequivocally stated that he had "worked in long-term care <u>as a nurse providing hands on care</u> to residents of nursing homes <u>in the years preceding</u> and following <u>the time of Ms. Callens's residency at St. Martin's</u>" and that he possessed experience "<u>providing</u> and overseeing <u>care for rehabilitation residents</u> like Ms. Callens <u>for many years prior to Ms. Callens's admission to St. Martin's</u>, while she was a resident at St. Martin's, and after she was a resident at St. Martin's." (Emphasis added.) That is not unclear testimony: Britton testified that he had provided similar care to patients like Callens in the year before Callens's stay at St. Martin's. Therefore, the circuit court did not err in denying Callens's motion to strike Britton's affidavit on the ground that he purportedly was not a qualified medical expert.

Callens also complains that Britton "never established the applicable standard of care." Callens's brief, p. 28. Because Britton never explicitly described the standard of care, Callens argues, "the burden should have never shifted to Callens, the nonmovant, to present substantial evidence from a similarly situated [health-care] provider as

21

to what actions from St. Martin's nursing staff breached the standard of care causing Callens's hip injuries." Id., p. 31.

As St. Martin's notes, Callens's argument misunderstands the burden-shifting process at the summary-judgment stage in a medical-malpractice case. "As a general rule, in a medical-malpractice action, the plaintiff is required to produce expert medical testimony to establish the applicable standard of care and a breach of that standard of care, in order to satisfy the plaintiff's burden of proof." Anderson v. Alabama Reference Lab'ys, 778 So. 2d 806, 811 (Ala. 2000). In other words, St. Martin's did not have the burden of establishing the applicable standard of care and the breach of that standard; that burden was on Callens. As the summary-judgment movant, St. Martin's was allowed to point out that Callens's evidence "failed to establish an essential element of her prima facie case" without having to establish the standard of care itself. Prowell v. Children's Hosp. of Alabama, 949 So. 2d 117, 128 (Ala. 2006). That is exactly what St. Martin's did: it highlighted the fact that Callens had failed to submit testimony from a medical expert detailing the applicable standard of care, the specific breach thereof, and medical causation of Callens's injuries. Callens did not overcome those deficiencies in her

22

prima facie case, and, therefore, St. Martin's was entitled to a summary judgment.

## IV. Conclusion

Callens's case did not present the type of "situation[] where the lack of skill is so apparent as to be understood by a layperson, thereby requiring only common knowledge and experience to understand it." Collins, 237 So. 2d at 871. Thus, Callens was required to establish by expert testimony: (1) the appropriate standard of care, (2) a breach of the standard of care, and (3) a proximate causal connection between the acts or omissions of St. Martin's nurses and the injuries sustained by Callens. See Prowell, 949 So. 2d at 126. Callens did not submit any such expert testimony. Therefore, the circuit court correctly entered a summary judgment in favor of St. Martin's on all of Callens's claims. The circuit court also correctly declined to strike the affidavit of Britton, the St. Martin's medical expert, because Britton satisfied the qualifications of a "similarly situated health care provider" enumerated in § 6-5-548(b). Thus, the circuit court's judgment is due to be affirmed.

AFFIRMED.

Shaw, J., concurs.

Mitchell, J., concurs in part and concurs in the result, with opinion, which Parker, C.J., and Bryan, J., join.

MITCHELL, Justice (concurring in part and concurring in the result).

The Jefferson Circuit Court entered summary judgment in favor of the Episcopal Foundation of Jefferson County d/b/a St. Martin's In-The-Pines ("St. Martin's") concerning Betty Callens's claims of negligence, wantonness-willfullness, battery, and medical malpractice.

Summary judgment was appropriate because Callens failed to present expert testimony from a "similarly situated health-care provider" to establish (1) the applicable standard of care, (2) breach of that standard, and (3) proximate cause -- a prerequisite to maintain a medical-malpractice action. See Pruitt v. Zeiger, 590 So. 2d 236, 238 (Ala. 1991). Callens also failed to demonstrate that her case falls under the "layman" exception, which would otherwise excuse a plaintiff from proffering expert testimony. Tuscaloosa Orthopedic Appliance Co. v. Wyatt, 460 So. 2d 156, 161 (Ala. 1984) (holding that expert testimony is not required in cases in which the "'want of skill or lack of care is so apparent … as to be understood by a layman [] and requires only common knowledge and experience to understand it'"). Accordingly, I concur with the main opinion in that holding.

I concur in the result only as to the discussion of the circuit court's decision to deny Callens's motion to strike Michael Britton's affidavit. As the main opinion notes, Callens's failure to proffer expert testimony without meeting the layman exception "constitutes a sufficient ground to affirm the circuit court's judgment." __ So. 3d at __. Consequently, the discussion of Britton's affidavit is not necessary to decide this appeal.

Parker, C.J., and Bryan, J., concur.