The issue presented in this case is whether the trial court erred in entering a summary judgment for the defendant, Ingersoll-Rand Company against the plaintiff, Ernest Fuqua, Jr., an employee of the 3M Company, who was injured by an allegedly defective chain hoist. After a careful review of the evidence submitted, we find that Ingersoll-Rand failed to meet its initial burden of showing a complete absence of any genuine issue of material fact. Accordingly, we must reverse and remand.
Fuqua was an employee of 3M Company, in its Decatur, Alabama, plant. Fuqua's job at the time in question was to "build filters." Building filters involved placing a large, industrial-sized filter, along with a metal gasket, into a tubing or barrel. After inserting an "eye bolt"[1] into the filter, Fuqua would use a chain hoist[2] to move *Page 487 
the filter from one part of the plant to a filter assembly area. Once in the filter assembly area, Fuqua would suspend the filter over the barrel, using his right hand to control the chain hoist; and then, holding the gasket in place with his left hand, Fuqua would lower the filter into the barrel. On March 28, 1987, while Fuqua was building a filter, the filter somehow slipped off the chain hoist. Two fingers of Fuqua's left hand were crushed by the weight of the filter and later required amputation.
Fuqua sued several chain hoist manufacturing companies, including the Ingersoll-Rand Company, Inc. ("Ingersoll-Rand"), and the Gardner-Denver Company, Inc. ("Gardner-Denver"), under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD").[3] Fuqua alleged that one of these companies had placed an unreasonably dangerous or defective product into the stream of commerce, and that the product had caused him injury when he used it in a normal or customary way. After substantial discovery, both Gardner-Denver and Ingersoll-Rand filed motions for summary judgment. The trial court granted each company's requested summary judgment. Fuqua did not appeal from the judgment entered in favor of Gardner-Denver, but did appeal from Ingersoll-Rand's summary judgment.
Initially, we note that our review of a summary judgment isde novo; that is, we must examine all the evidence that was before the trial court. Tolbert v. Gulsby, 333 So.2d 129 (Ala. 1976). The two-tiered standard of review for summary judgment has been repeatedly stated: 1) there must be no genuine issuesof material fact, and 2) the movant must be entitled to a judgment as a matter of law. Ala.R.Civ.P. 56(c), Tripp v.Humana, Inc., 474 So.2d 88 (Ala. 1985) (emphasis supplied). Further, on review of a summary judgment we must view all the evidence in a light most favorable to the nonmovant, here Fuqua; and we must entertain all reasonable inferences from the evidence in favor of the nonmovant. Fincher v. Robinson Bros.Lincoln-Mercury, Inc., 583 So.2d 256 (Ala. 1991). See, also,Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990).
One moving for a summary judgment must come forward with a prima facie showing that there are no genuine issues of material fact, and that he is entitled to a judgment as a matter of law. Fincher, 583 So.2d at 257. If this showing is made, the burden then shifts to the nonmovant to rebut the movant's prima facie showing by "substantial evidence." Ala. Code 1975, § 12-21-12. Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). *Page 488 
Ingersoll-Rand makes five arguments as to why there were no genuine issues of material fact, and thus why it says it was entitled to a judgment as a matter of law. Ingersoll-Rand says: 1) that there was no evidence that it made the chain hoist in question; 2) that there was no evidence that the chain hoist was defective; 3) that there was no evidence that the chain portion of the chain hoist was defective; 4) that there was no evidence that the hook portion of the chain hoist was defective; and 5) that, even admitting that the safety latch portion of the chain hoist was defective, there was no evidence that Ingersoll-Rand made the safety latch in question. While Ingersoll-Rand's arguments as to the hook and chain portions of the chain hoist[4] may be valid, we are unconvinced by the other arguments. We find that there are genuine issues of material fact that should be submitted to a jury. Two genuine issues of material fact, at the very least, are evident from our de novo
review of the record: whether Ingersoll-Rand actually manufactured the chain hoist, and whether Ingersoll-Rand manufactured the safety latch attached to the hook of the chain hoist used by Fuqua on the day of the accident.
As to the issue of what company manufactured the chain hoist used by Fuqua, there was ample evidence submitted in opposition to the summary judgment motion that, when viewed in a light most favorable to the nonmovant, could lead a fair-minded person to conclude that Ingersoll-Rand manufactured the chain hoist. The deposition testimony is replete with references to Ingersoll-Rand hoists having "bicycle" type chains, while other company's hoists have "link or log" type chains. Further, several deponents, who viewed the accident scene soon after the accident, testified that the hoist used by Fuqua had a "bicycle" type chain. This evidence supports the inference that Ingersoll-Rand manufactured the chain hoist used by Fuqua on the day of his accident.
There was also testimony that the chain hoist used by Fuqua was probably not made by Ingersoll-Rand, and there was testimony that the chain hoist in question had a "log" type chain, thus supporting the inference that the chain hoist was not manufactured by Ingersoll-Rand. Quite obviously, then, there was a genuine factual dispute on this issue requiring a jury determination.
On the question of whether Ingersoll-Rand manufactured the safety latch that was attached to the hook of the chain hoist used by Fuqua on the day of the accident, there was also sufficient conflict in deposition testimony to raise a genuine issue of fact for jury determination. Specifically, Tommy Farris, the 3M employee in charge of maintaining all the chain hoists in 3M's Decatur plant, testified that parts for an Ingersoll-Rand chain hoist were never interchanged with parts on any other company's hoist, because the manufacturers did not recommend doing that and because interchanging parts was against company policy. Further, Farris testified that replacement parts for any given hoist were ordered only from the particular company that made the hoist. The inference, of course, is that the safety latch on the hoist used by Fuqua was made by Ingersoll-Rand.
In contradiction to Farris's testimony, Raymond Sutton, the 3M employee in charge of safety and security, testified that replacement safety latches were purchased from a local supplier. It is not clear from Sutton's deposition, however, which company manufactured the safety latches for the local supplier. At one point, Sutton asserted *Page 489 
that he did not know who manufactured the safety latch, while at another point he testified that a J.H. Williams Company manufactured the latches. In short, it is clear that there was a genuine dispute as to what company actually manufactured the safety latch attached to the hook of the chain hoist used by Fuqua on the day of his accident.
Having found at least two genuine issues of material fact, we hold that the trial court erred by entering the summary judgment for Ingersoll-Rand; therefore, we reverse that judgment and remand the case.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, ADAMS and INGRAM, JJ., concur.
[1] An "eye bolt" is defined as "a bolt with a looped head."Webster's Ninth New Collegiate Dictionary 442 (1986).
[2] Deposition testimony offered the fact that a chain hoist consists of basically three parts: the hoist mechanism, or that part of the machine that actually raises and lowers the chain; the chain; and the hook. Additionally, the hook will most often have a safety latch or catch attached to it that is designed to prevent any object attached to the hook from slipping off the hook during movement. For clarity, these four terms will be used throughout this opinion: "hoist mechanism," "chain," "hook," and "safety latch." When referring to the entire machine we will use the term "chain hoist."
[3] In Casrell v. Altec Industries, Inc., 335 So.2d 128, 132-33
(Ala. 1976), and Atkins v. American Motors Corp.,335 So.2d 134, 141 (Ala. 1976), this Court set out the elements of a prima facie case under the AEMLD, as follows:
"To establish liability, a plaintiff must show:
 "(1) he suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if
 "(a) the seller is engaged in the business of selling such a product, and
 "(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
 "(2) Showing these elements, the plaintiff has proved a prima facie case although
 "(a) the seller has exercised all possible care in the preparation and sale of his product, and
 "(b) the user or consumer has not bought the product from, or entered into any contractual relation with, the seller."
In Sears, Roebuck Co. v. Haven Hills Farm, Inc.,395 So.2d 991, 995 (Ala. 1981), this Court added two additional elements to an AEMLD prima facie case: 1) proof that "the product was substantially unaltered when used by [the plaintiff]," and 2) proof of "causation in fact, including proof that the defect caused the injury and that the defect is traceable to the Defendant."
[4] Ingersoll-Rand's argument as to the "hoist" itself may also be valid; however, the ambiguity of the phrase makes it impossible for this Court to determine the validity of the argument. If by "hoist" Ingersoll-Rand means the hoist mechanism or the top piece of the chain hoist that actually moves the chain up and down, Ingersoll-Rand may have a valid argument. However, if by "hoist" Ingersoll-Rand means the entire apparatus used by Fuqua, then there is evidence that one part of that apparatus, the safety latch, was defective, and, therefore, there is evidence that the entire apparatus was defective. Determination of which alternative Ingersoll-Rand intended is not necessary, however, because we find other genuine issues of material fact worthy of jury determination.