The petitioners, John A. Hayles and Terry L. McDuffie, employees of the Alabama Department of Transportation ("ALDOT"), filed this petition for a writ of mandamus directing Judge Charles Price to dismiss all claims against them in their individual capacities based on State-agent immunity.
In Ex parte Butts, 775 So.2d 173 (Ala. 2000), this Court provided the underlying facts of this cause of action:
 "The Alabama Department of Conservation and Natural Resources (`ADOC') owned a bridge over Lake Martin known as the Old Kowaliga Bridge (`the old bridge'). When a new Kowaliga Bridge was constructed to take the place of the old bridge, ADOC closed the old bridge to traffic and designated it for use as a public fishing pier. The old bridge fell into a state of disrepair, and ADOC decided to demolish it. ADOC solicited bids for the demolition project. The Alabama Department of Transportation (`ALDOT') offered the lowest bid, at $ 67,681; ADOC accepted that bid. ALDOT formulated a plan and assembled a crew for the demolition project. During the demolition of the old bridge, however, it collapsed prematurely. Two ALDOT employees, Randall Phillips and Frank Williams, who were working on the old bridge when it collapsed, died when pieces of the old bridge pinned them at the bottom of Lake Martin. *Page 119 
 "The widows of Phillips and Williams, acting as administratrices of their husbands' estates, along with their minor children (hereinafter the widows and the minor children will be sometimes referred to collectively as `the families'), sued ADOC; ALDOT; [James D.] Martin, the former director of ADOC; [Jimmy] Butts, the former director of ALDOT; [Ray] Bass, ALDOT's chief engineer; [Douglas `Mitch'] Kilpatrick, ALDOT's chief maintenance engineer; [Terry L.] McDuffie, an assistant bridge-maintenance engineer for ALDOT; [Bob] Campbell, an assistant bridge-maintenance engineer for ALDOT; and [John A.] Hayles, the supervisor of the ALDOT work crew to which Phillips and Williams were assigned. Each of the individual defendants was sued in both his official capacity and his individual capacity. The families' complaint alleged (1) that Butts had negligently or wantonly authorized the use of ALDOT personnel to demolish the bridge; (2) that Martin had negligently or wantonly allowed ALDOT to use unqualified personnel to demolish the bridge; (3) that the defendants had negligently or wantonly failed to halt the demolition project after discovering that insufficient funds had been allocated to the project; (4) that the defendants had negligently or wantonly hired, trained, and/or supervised the personnel assigned to demolish the bridge; (5) that Bass had negligently or wantonly submitted ALDOT's bid for the project; (6) that Kilpatrick had negligently or wantonly developed the plan to demolish the bridge; (7) that McDuffie, Campbell, and Hayles had negligently or wantonly implemented the plan; and (8) that Kilpatrick, McDuffie, Campbell, and Hayles had negligently or wantonly assumed the duties of a `bridge and/or structural engineer,' without proper qualifications for those duties."
775 So.2d at 175.
In Butts, several employees of ALDOT, including McDuffie and Hayles, petitioned this Court for a writ of mandamus directing the trial court, among other things, to dismiss the claims against them in their individual capacities. We, however, denied the petition as to that request, stating:
 "We emphasize that this mandamus petition asks for a writ directing the circuit judge to dismiss claims against the defendants, not to enter a judgment for them on the merits.
". . . .
 ". . . At first blush, it appears that some claims, such as those regarding the use of personnel, hiring and supervising personnel, and the formulation of the demolition plan, are due to be dismissed, pursuant to the [Ex parte] Cranman[, 792 So.2d 392 (Ala. 2000),] test. However, if any employee failed to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist, or acted willfully, maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law, then it is possible that that employee would not be entitled to State-agent immunity. . . . It is conceivable that the families could prove facts that would show that one or more of the employees failed to discharge duties pursuant to a checklist or acted willfully, maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law. If so, the families `may possibly prevail' on their claims. Therefore, the trial court properly denied the employees' motion to dismiss the claims stated against them in their individual capacities."
775 So.2d at 177-78 (emphasis added).
We acknowledged in Butts that after the parties conducted discovery, the employees *Page 120 
would have the opportunity to seek a summary judgment on the ground that they are entitled to State-agent immunity and that if the trial court denied the employees' motion for a summary judgment, they could petition this Court for a writ of mandamus. 775 So.2d at 178.
After we issued our opinion, the parties conducted extensive discovery, and the employees moved for a summary judgment on the ground that they are entitled to State-agent immunity. The trial court entered a summary judgment for all the employees except Hayles and McDuffie, who petition us for a writ of mandamus directing the trial court to enter a summary judgment in their favor on the ground that they are immune from civil liability based on State-agent immunity.
 Standard of Review "While the general rule is that the denial of a motion for summary judgment is not reviewable, the exception is that the denial of a motion grounded on a claim of immunity is reviewable by petition for writ of mandamus. Ex parte Purvis, 689 So.2d 794 (Ala. 1996). . . .
 "Summary judgment is appropriate only when `there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.' Rule 56(c)(3), Ala.R.Civ.P., Young v. La Quinta Inns, Inc., 682 So.2d 402 (Ala. 1996). A court considering a motion for summary judgment will view the record in the light most favorable to the nonmoving party, Hurst v. Alabama Power Co., 675 So.2d 397
(Ala. 1996), Fuqua v. Ingersoll-Rand Co., 591 So.2d 486
(Ala. 1991); will accord the nonmoving party all reasonable favorable inferences from the evidence, Fuqua, supra, Aldridge v. Valley Steel Constr., Inc., 603 So.2d 981 (Ala. 1992); and will resolve all reasonable doubts against the moving party, Hurst, supra, Ex parte Brislin, 719 So.2d 185 (Ala. 1998).
 "An appellate court reviewing a ruling on a motion for summary judgment will, de novo, apply these same standards applicable in the trial court. Fuqua, supra, Brislin, supra. Likewise, the appellate court will consider only that factual material available of record to the trial court for its consideration in deciding the motion. Dynasty Corp. v. Alpha Resins Corp., 577 So.2d 1278 (Ala. 1991), Boland v. Fort Rucker Nat'l Bank, 599 So.2d 595 (Ala. 1992), Rowe v. Isbell, 599 So.2d 35 (Ala. 1992)."
Ex parte Rizk, 791 So.2d 911, 912-13 (Ala. 2000).
 Analysis
Hayles and McDuffie ask this Court to issue a writ of mandamus directing the trial court to enter a summary judgment in their favor, on the ground that they are protected against civil liability by the doctrine of State-agent immunity.
In Ex parte Cranman, 792 So.2d 392 (Ala. 2000), this Court held:
 "A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
"(1) formulating plans, policies, or designs; or
 "(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
". . . .
"(b) allocating resources;
". . . .
 "(d) hiring, firing, transferring, assigning or supervising personnel; or *Page 121 
 "(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner. . . .
". . . .
 "Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
". . . .
 "(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."
792 So.2d at 405.
We review Hayles's and McDuffie's claims of immunity pursuant to the standard set forth in Cranman.
Hayles, the supervisor of the ALDOT work crew responsible for demolishing the Old Kowaliga Bridge, and McDuffie, an assistant bridge-maintenance engineer for ALDOT, are protected under the doctrine of State-agent immunity because their actions were undertaken in their capacities as supervisors for ALDOT. Nothing before us indicates that they exceeded the scope of their authority. No evidence was presented indicating that they acted in violation of the rules or regulations of ALDOT or that they acted "willfully, maliciously, fraudulently, in bad faith," or beyond their authority.
The evidence before us indicates that McDuffie formulated a general plan for the demolition of the bridge, but that he and Hayles worked together to form a specific daily plan for the demolition. Testimony indicated that none of ALDOT's rules or regulations at the time the bridge was being destroyed required a detailed written plan for the bridge's demolition. The evidence further indicates that while McDuffie supervised Hayles, his crew, and the demolition of the bridge, Hayles was authorized to make daily decisions to facilitate the demolition. The evidence clearly indicates that all decisions made by McDuffie and Hayles were made while they were acting in an official capacity.
The respondents specifically argue that Hayles and McDuffie should not be granted State-agent immunity because, they say, the men's actions exceeded the scope of their written job descriptions.
With regard to Hayles, the supervisor of the work crew demolishing the bridge, the respondents maintain that in modifying the order in which the bridge was dismantled he exceeded the scope of his authority as defined by the written job description for his position. Testimony indicated that Hayles was a valued employee of ALDOT with extensive experience and knowledge in bridge maintenance. Hayles's supervisors indicated that, although it was not specifically noted in his job description, Hayles did have discretion in the day-to-day activity of dismantling the bridge. Indeed, his supervisors indicated that they relied on Hayles's expertise in making decisions with regard to the demolition of the bridge. Nothing before us indicates that Hayles exceeded the general scope of his authority as that authority was defined by his supervisors and his job description. Cf. Ex parte Spivey, 846 So.2d 322 (Ala. 2002).
Likewise, nothing before us indicates that McDuffie exceeded the scope of his authority. While the respondents contend that McDuffie, an assistant bridge-maintenance engineer, did not have the authority to delegate any engineering decision-making to Hayles, they ignore the fact that McDuffie's job description includes *Page 122 
"provid[ing] engineer guidance [and] mak[ing] recommendations to crew superintendents." Nothing before us indicates that McDuffie exceeded the scope of his authority by allowing Hayles to make daily job-site decisions. Cf. Ex parte Spivey, supra.
With regard to the respondents' contention that Hayles "unilaterally" changed the demolition plans without discussing the change with McDuffie, all parties appear to agree that although McDuffie developed the plan for the demolition of the bridge, no detailed checklist for the demolition was created for Hayles to follow. The evidence indicates that Hayles and McDuffie worked together to determine the day-to-day operations of the demolition and that Hayles was authorized to make decisions to carry out the day-to-day operations. We recognize that the evidence appears to indicate that the general plan for the demolition of the bridge designated that the concrete deck on the last span of the bridge and the concrete pier should be removed before the diagonal bracing was cut. Evidence was presented indicating that the diagonal bracing may have been cut before the concrete slab on the last span and the concrete pier was removed. The respondents maintain that the bridge collapsed prematurely because, they say, Hayles disregarded the master plan for the demolition and ordered the diagonal bracing to be cut before the concrete slab on the last span and the concrete pier was removed. ALDOT's investigation of the accident, however, indicated that several of the timber piles supporting the bridge had not been driven into the ground and that ALDOT had no way of knowing of this structural instability when it developed and implemented the plan for demolishing the bridge. ALDOT attributed the cause of the premature collapse of the bridge to the instability of those timbers and their weakening of the structure. Hayles's actions with regard to the day-to-day decisions regarding the demolition of the bridge were made within the scope of his job authority.
The depositions of various employees of ALDOT describe the duties
McDuffie and Hayles were discharging during the destruction of the bridge and demonstrate that McDuffie and Hayles were exercising their judgment
in discharging their duties. McDuffie and Hayles also established their good faith, their lack of malice, and their authority for their actions. The respondents do not present substantial evidence to the contrary. Therefore, McDuffie and Hayles have established that they are entitled to State-agent immunity as to the State-law causes of action.
By our holding today we do not discount the tragedy of the accident that took the lives of Frank Williams and Randall "Lane" Phillips and the suffering of their families. With the benefit of hindsight, especially the knowledge of the improper installation of the timber piles supporting the bridge, one might question the wisdom of McDuffie and Hayles's method of demolishing the bridge; we will not, however, second-guess their decisions. Viewing the facts in a light most favorable to the respondents, as we must, see Ex parte Rizk, supra, we conclude that there is not sufficient evidence to indicate that McDuffie and Hayles acted "willfully, maliciously, fraudulently, [or] in bad faith" in exercising their judgment during the demolition of the Old Kowaliga Bridge. State-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities. Applying the law established in Ex parte Cranman and its progeny to the facts of this case, we conclude that the trial court erred in denying the motion for a summary judgment. *Page 123 
 Conclusion
Hayles and McDuffie have shown a clear legal right to the relief sought. The trial court is directed to enter a summary judgment in favor of Hayles and McDuffie.
PETITION GRANTED; WRIT ISSUED.
Houston, Lyons, Brown, Harwood, and Woodall, JJ., concur.
See, J., concurs in the result.
Moore, C.J., and Johnstone, J., concur in part and dissent in part.