THOMAS, Judge,
 

 On November 30, 2006, members of the federal Drug Enforcement Agency (“DEA”) and members of the Prattville Police Drug Enforcement Unit (sometimes referred to collectively as “the law-enforcement officers”) intercepted a package suspected of containing marijuana. After a dog trained to sniff out drugs alerted on the package, the package was opened and the contents were examined. The package contained a green, leafy substance consistent with marijuana. The package was being sent from “James” in California to “John,” whose address was listed as 1274 County Road 85, Prattville, Alabama.
 

 The law-enforcement officers performed a “controlled delivery” of the package to the address to which it was addressed. After knocking at the door led to no response, an undercover DEA agent left the package on the front porch of the residence. The law-enforcement officers maintained direct surveillance on the package. When the occupant of the residence returned home, she retrieved the package from the porch and entered her residence.
 

 The law-enforcement officers converged on the residence at this time. Upon gaining entry to the residence, the law-enforcement officers discovered the package, unopened, on the floor just inside the front door. Certain law-enforcement officers conducted a sweep of the residence to ensure safety and other law-enforcement officers determined the identity of the occupant of the residence to be Betty Gardner (“Betty”) and handcuffed and interviewed Betty. The remaining law-enforcement officers were instructed to return to their surveillance locations to prevent the residence from appearing to be occupied by law-enforcement officers. As instructed by certain law-enforcement officers, Betty telephoned Daryl “Talk” Gardner to tell him that the package had
 
 *225
 
 arrived. Gardner had asked Betty if he could have a package sent to Betty’s residence the day before, and he had inquired about a package on two occasions already that day; Gardner had instructed her to telephone him when the package arrived. When Gardner arrived and Betty, still handcuffed, opened the door of the residence as instructed, the law-enforcement officers apprehended Gardner and his companion, Dwight DeRamus, as they attempted to flee. At the time of his arrest, Gardner made a statement to the effect of “I’ll do 100 years, I ain’t no snitch.” Notably, neither Gardner nor DeRamus touched the package.
 

 Upon their arrest, Gardner and DeRa-mus were searched. That search yielded a total of $1,495 in cash on Gardner’s person and a total of $2,660 in cash on DeRamus’s person. The law-enforcement officers also searched the vehicle in which Gardner and DeRamus had arrived, a rented, pewter-colored Chevy Impala automobile. In that vehicle, the law-enforcement officers found three cellular telephones and $6,850 in cash; the cash was recovered from the pocket behind the front passenger seat. The green, leafy substance in the package was confirmed to be marijuana, and the package was found to contain 4,781 grams, or over 10 pounds, of marijuana.
 
 [1]
 

 The State of Alabama petitioned to condemn and forfeit the $11,005 in currency seized from Gardner, DeRamus, and the vehicle to the State pursuant to Ala.Code 1975, § 20-2-93(a)(4), which reads as follows:
 

 “(a) The following are subject to forfeiture:
 

 “(4) All moneys ... furnished or intended to be furnished by any person in exchange for a controlled substance in violation of any law of this state; all proceeds traceable to such an exchange; and all moneys ... used or intended to be used to facilitate any violation of any law of this state concerning controlled substances .... ”
 

 Gardner and DeRamus did not seek to have the civil forfeiture proceeding stayed pending the outcome of their criminal trial, so the forfeiture case proceeded. As part of the preparation of the forfeiture case against Gardner and DeRamus, the State propounded interrogatories to them. In general, those interrogatories requested information relating to the reason why Gardner and DeRamus visited Betty’s residence on November 30, 2006, the reason they rented the Chevy Impala vehicle, and the amount and sources of their income and, specifically, the source of the $11,005 in currency they had on their persons and in the vehicle on November 30, 2006. Gardner and DeRamus asserted their Fifth Amendment privilege against self-incrimination in response to each interrogatory propounded by the State.
 

 The State moved for a summary judgment, which was supported by the affidavit testimony of two officers involved in the “controlled delivery” of the package and the ultimate arrest of Gardner and DeRa-mus, Lieutenant David Williams and In
 
 *226
 
 vestigator M.B. Harrell, Gardner’s and DeRamus’s responses to the propounded interrogatories, Betty’s deposition testimony, and several certified court documents reflecting convictions relating to drug offenses committed by Gardner and DeRa-mus. Gardner and DeRamus opposed the motion; however, they presented no evidence in opposition to the motion. Instead, Gardner and DeRamus argued that the State had not met its burden of proving a lack of a genuine issue of material fact regarding whether the package was, in fact, the package that Gardner had been waiting to receive and whether the money that Gardner and DeRamus had on their persons and in the vehicle was used or intended to be used to facilitate a violation of a controlled-substances law. The trial court entered a summary judgment in favor of the State, and Gardner and DeRa-mus appeal.
 

 We review a summary judgment de novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3);
 
 see Lee v. City of Gadsden,
 
 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ”
 
 Lee,
 
 592 So.2d at 1038 (footnote omitted). “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.”
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989);
 
 see
 
 Ala.Code 1975, § 12-21-12(d). Furthermore, when reviewing a summary judgment, the appellate court must view all the evidence in a light most favorable to the nonmovant and must entertain all reasonable inferences from the evidence that a jury would be entitled to draw.
 
 See Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C.,
 
 792 So.2d 369, 372 (Ala.2000); and
 
 Fuqua v. Ingersoll-Rand Co.,
 
 591 So.2d 486, 487 (Ala.1991).
 

 The affidavit testimony of Lt. Williams and Investigator Harrell contained a recitation of the facts stated above. In addition, Lt. Williams and Investigator Harrell made the following statement in their affidavits:
 

 “Based on my experience in law enforcement, I believe that the presence of multiple cell phones inside the vehicle is indicative of potential drug dealing activity. Further, based on my experience, I believe that the use of a rental car is further potential evidence of drug dealing activity. For example, drug dealers sometimes use rental cars to avoid having their cars, which are known to local law enforcement, followed. In addition, the use of a rental car allows for the use of illegal narcotics inside the car without having the odor of drug use present in their personal cars. Also, the use of rental cars can protect personal vehicles against the State’s drug forfeiture laws.
 

 “As a narcotics investigator, I further evaluated the denominations of money located in the possession of Daryl Gardner and Dwight DeRamus. Recovered from Daryl Gardner’s pocket was 15 $5 bills (total of $75), 16 $10 bills (total of $160), and 63 $20 bills (total of $1260). Recovered from Dwight DeRamus’ pocket was 28 $20 bills (total of $560), and 21 $100 bills (total of $2100). The
 
 *227
 
 currency from the vehicle included 2 $5 bills (total of $10), 32 $20 bills (total of $640), 4 $50 bills (total of $200), and 60 $100 bills (total of $6000). The large number of small denomination bills ($5, $10, $20, and $50) in the recovered currency is consistent with currency used in street level drug distribution.”
 

 Betty’s testimony was to the effect that Gardner had inquired on November 29, 2006, whether he could have a package sent to her residence and that he had inquired twice on November 30, 2006, about whether the package had arrived. In addition, Betty said that Gardner had come by the house both times he had inquired about the package he was expecting. The first time Gardner came by Betty’s residence on November 30 he brought Betty a barbeque sandwich and a grape soda; the second time he came by that day she requested money for gas, beer, and cigarettes and he provided her a $20 bill. Although Betty recalled that another person had been in the vehicle Gardner was driving when he visited her before the package arrived, Betty testified that the other person was not DeRamus. Betty testified that she did not know if the package she received that day, which was not addressed to either Gardner or DeRamus, was the package that Gardner was expecting; she said that neither Gardner nor DeRamus had ever picked up the package.
 

 Betty further testified that, in addition to her and her husband, Ernest Gardner, other members of her husband’s extended family, including three sisters, three nephews, two brothers, and two nieces, received mail at the residence from time to time because they had once resided at the residence. At least two of those people had drug-related convictions — Ernest Gardner and his brother Freddy Gardner; Betty said that she was not certain whether Ernest’s other brother, F.J. Gardner, had served time in prison because of a drug-related conviction or for some other reason. Betty also testified that she had seen Ernest’s sister, Joyce Thompson, smoke marijuana outside the residence in 2004; Betty said of Joyce: “She don’t sell. She smoke.”
 

 Betty had originally refused to be deposed in this case, asserting her Fifth Amendment privilege against self-incrimination. She later decided to give her deposition, although she did assert the privilege a few times during the deposition. At the time of the deposition, Betty was incarcerated on a charge stemming from her failure to pay restitution in a criminal case involving an assault on another person with a razor blade.
 

 In its order granting the State’s summary-judgment motion, the trial court states that the State
 

 “has proved to a reasonable satisfaction that [Gardner and DeRamus] are linked to the more than 10 pounds of marijuana shipped to Betty Gardner’s residence. [Gardner and DeRamus] possessed a large amount of currency with a large number of denominations of bills used in street level transactions. [Gardner and DeRamus] used multiple cell phones and a rental car to further their controlled substances crimes. [Gardner and DeR-amus] took active steps to conceal the large amounts of currency from detection by law enforcement. The State established that [Gardner and DeRamus] actually used some of the cash on Betty Gardner to further their controlled substances crime. Finally, [Gardner and DeRamus] failed to turn over their financial records requested by the State during discovery to show that the money had a legitimate source. By invoking the Fifth Amendment in response to the State’s request for this information, the Court is allowed to draw a negative in
 
 *228
 
 ference about the source of this income. Thus, not only did the State show that some of the money was used to facilitate a controlled substances crime, the Court is allowed to infer that had [Gardner’s and DeRamus’s] financial documents [been] produced they would have failed to show a legitimate source of the currency possessed by [Gardner and DeRa-mus].”
 

 In this case, a forfeiture case involving currency, the State was required to prove to the trial court’s reasonable satisfaction “that the money seized was: (1) furnished or intended to be furnished by [Gardner and DeRamus] in exchange for a controlled substance; (2) traceable to such an exchange; or (3) used or intended to be used to facilitate a violation of any law of this state concerning controlled substances.”
 
 Wherry v. State ex rel. Brooks,
 
 637 So.2d 890, 892 (Ala.Civ.App.1994). However, because this case was disposed of by summary judgment, the State was required to prove the lack of a genuine issue of material fact regarding each of those elements. Although the evidence submitted by the State might be sufficient for a trier of fact to conclude that Gardner and DeRamus were involved in the distribution or trafficking of marijuana and, more importantly, that the currency seized from them was intended for use to facilitate the violation of the State’s controlled-substances laws, we cannot agree that the evidence presented by the State was sufficient to entitle the State to a summary judgment in this forfeiture case.
 

 When considering a summary-judgment motion, a trial court, and a reviewing court, must view the evidence in the light most favorable to the nonmovant.
 
 Fuqua v. Ingersoll-Rand Co.,
 
 591 So.2d 486, 487 (Ala.1991). Although Lt. Williams and Investigator Harrell testified in their- affidavits that the use of a rental car was evidence of potential involvement in the drug trade, that testimony is not evidence that establishes that Gardner and DeRamus were using a rental car for the purpose of selling drugs. It is undisputed that the package that contained the marijuana was not addressed to either Gardner or DeRa-mus and that neither man ever touched or claimed the package. Betty’s testimony was that she was not sure that the package was the package that Gardner had inquired about, and she testified that other persons with connections to drugs and drug activity received mail at the residence from time to time. Even Gardner’s statement to the effect that he would do ‘TOO years” and would not “snitch,” which was apparently made in response to a request that he cooperate with law enforcement, is not, as the trial court characterized it, an admission; in fact, because we do not know the exact question to which it was a response, and because we are required to view the evidence in the light most favorable to the nonmovant, it is more fairly viewed as an invocation of the right to remain silent in the face of questioning. Viewing the evidence submitted by the State in the light most favorable to the nonmovants, Gardner and DeRamus, as we must, we cannot conclude, as the trial court did, that the State met its burden of proving that there existed no genuine issue of material fact regarding whether Gardner and DeRamus were involved in the commission of a controlled-substances crime and, more importantly, that the currency seized from their persons and from the rental vehicle was used or intended to be used in furtherance of a violation of the State’s controlled-substances laws.
 

 The State and the trial court relied heavily on the assertion of the Fifth Amendment privilege against self-incrimination by Gardner and DeRamus. Although the assertion of a party’s Fifth Amendment privilege in a civil case per
 
 *229
 
 mits the trier of fact to draw an adverse inference against the party asserting the privilege, see
 
 Baxter v. Palmigiano,
 
 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), we cannot agree that the assertion of the privilege should be the sole basis for a determination that a summary judgment is due the State in this case.
 
 See Rockwood Computer Corp. v. Morris,
 
 94 F.R.D. 64, 67 (E.D.N.Y.1982) (“Just as the Fifth Amendment precludes the dismissal of a plaintiffs complaint solely on the basis of his having invoked the privilege against self-incrimination at a deposition, so it must prohibit the granting of summary judgment against a defendant who has asserted the same privilege. Such relief would impose a significant cost for the defendant’s silence, and as such would run afoul of the constitutional protection.”). Had we concluded that the evidence submitted by the State established that there existed no genuine issue of material fact regarding both a connection between Gardner and DeRamus and the marijuana contained in the package and a connection between the seized currency and the facilitation of a controlled-substances crime, we might have reached a different conclusion about the ability of the trial court to consider the adverse inferences raised by the assertion of the privilege by Gardner and DeRamus.
 
 See Baxter,
 
 425 U.S. at 317-18, 96 S.Ct. 1551 (distinguishing between allowing an adverse inference from the assertion of the privilege when the adverse inference is weighed along with other evidence as opposed to allowing the adverse inference alone to form the basis of the determination of guilt or liability).
 

 Based on the State’s failure to establish the lack of a genuine issue of material fact regarding a connection between Gardner and DeRamus and the package delivered to Betty’s residence and its failure to establish the lack of a genuine issue of material fact regarding a connection between the currency seized during the arrest of Gardner and DeRamus and the facilitation of a violation of the controlled-substance laws of the state, we reverse the summary judgment in favor of the State and remand the cause for further proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
 

 BRYAN, J., concurs in the result, without writing.
 

 [1]
 

 . At trial and on appeal, Gardner and DeRa-mus have challenged the admission of the drug analysis in this case on the basis that the State failed to establish a proper chain of custody of the package. We will assume for purposes of this appeal that the green, leafy substance was, in fact, marijuana. Because we dispose of this appeal based on the argument that the State failed to establish its entitlement to a summary judgment under Rule 56, Ala. R. Civ. P., we will not address the argument presented by Gardner and DeRa-mus regarding the chain of custody. We express no opinion on whether the State must establish a chain of custody in a civil forfeiture case or whether the Slate has done so in this case.