SELLERS, Justice.
Terrence Venter and the City of Selma ("the City") petition this Court for a writ of mandamus directing the Dallas Circuit Court to vacate its February 20, 2017, order denying their motion for a summary judgment based on Venter's State-agent immunity and to enter an order based on that defense. We deny the petition.
Facts and Procedural History
On September 19, 2008, Aubrey Vick was killed when the vehicle he was driving collided with a fire truck being driven by Venter; the collision occurred at the intersection of Old Orrville Road and Vaughan Memorial Drive in Selma. Mary Vick, as administrator of Aubrey's estate ("the estate"), filed a wrongful-death complaint against Venter and the City. In count one of the complaint, the estate alleged that Venter, "while acting in the line and scope of his employment with the City of Selma's fire department, and operating a vehicle owned by the City of Selma, negligently drove the vehicle into the vehicle owned by plaintiff's decedent." The estate claimed *780 that the City was vicariously liable for Venter's alleged negligence. Count two of the complaint alleged that the City had negligently installed, maintained, and/or designed the traffic light at the intersection where the accident occurred.
On October 10 2010, Venter and the City filed a motion for a summary judgment pursuant to Rule 56, Ala. R. Civ. P., raising as to count one the defense of discretionary-function immunity, now referred to as State-agent immunity, see Ex parte Cranman, 792 So.2d 392 (Ala. 2000), and as to count two the defense of substantive immunity. In support of the motion for a summary judgment as to count one, Venter and the City relied on Venter's affidavit, which states, in relevant part:
"On September 19, 2008, right around lunch time, I was traveling down Old Orrville Road with Captain Coley Byrd and fellow fireman Kenny Brown. We were traveling in fire truck # 104 and were returning to Selma Fire Station # 4 after riding around assigned territory within the City of Selma. We had been patrolling areas around the City of Selma, learning streets and areas, inspecting streets and layout of the City of Selma and to simply cover our territory in case someone is in need of assistance. These patrols are an essential part of our duties as firemen. In addition, the patrols often serve as a sort of training exercise so we can learn about our fire territory and our duties as City of Selma firemen. Similar to a police officer, if we are not directly responding to a call or at the scene of a fire, we are often simply patrolling, looking for people in need of help or waiting for an emergency call. During these patrols, if someone needs help from us, we will pull over and assist in any possible way.
"On the day of the accident, as I approached the intersection of Old Orrville Road and Vaughan Memorial Drive, the traffic light was green, giving me the right of way. The light was green as I approached the intersection and remained green as I prepared to pass through the intersection. The fire truck was traveling approximately 30 miles per hour as I approached the intersection. Just prior to entering the intersection, I noticed a silver Nissan truck approaching the intersection at a speed indicating the truck was going to enter the intersection. It was later determined that the truck was driven by Aubrey Vick. I noticed the truck immediately before entering the intersection and took my foot off the accelerator to prepare to brake. The truck then began slowing down and looked like it was going to stop at the stop light. But the other truck did not stop and entered the intersection, proceeding through the red light. The vehicles arrived at the intersection simultaneously, with my vehicle proceeding through the intersection on a green light. For no apparent reason, the other truck, Vick, was looking to his right. Vick drove his truck directly into the path of the City of Selma fire truck."
Venter and the City also attached to the summary-judgment motion the affidavits of Captain Richard Coley Byrd and Kenny Brown, both of whom were passengers in the fire truck at the time of the accident and both of whom provided similar accounts of the events leading up to the accident. The estate responded by filing a motion requesting a continuance of the hearing on the summary-judgment motion until after the City had responded to the estate's discovery request concerning the traffic light at the intersection.[1] On February *781 20, 2017, following a hearing, the trial court entered an order, denying the motion for a summary judgment. Venter and the City filed this petition for a writ of mandamus asking this Court to direct the trial court to enter a summary judgment for Venter and the City on the basis of both State-agent immunity and substantive immunity. This Court ordered answers and briefs as to only the issue whether Venter is entitled to State-agent immunity.
Standard of Review
"A writ of mandamus is an extraordinary remedy available only when the petitioner can demonstrate: ' "(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court." ' Ex parte Nall, 879 So.2d 541, 543 (Ala. 2003) (quoting Ex parte BOC Grp., Inc., 823 So.2d 1270, 1272 (Ala. 2001) )."
Ex parte Alabama Dep't of Corr., [Ms. 1160413, August 25, 2017] --- So.3d ----, ---- (Ala. 2017).
" 'While the general rule is that the denial of a motion for summary judgment is not reviewable, the exception is that the denial of a motion grounded on a claim of immunity is reviewable by petition for writ of mandamus. Ex parte Purvis, 689 So.2d 794 (Ala. 1996)....
" 'Summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala. R. Civ. P., Young v. La Quinta Inns, Inc., 682 So.2d 402 (Ala. 1996). A court considering a motion for summary judgment will view the record in the light most favorable to the nonmoving party, Hurst v. Alabama Power Co., 675 So.2d 397 (Ala. 1996), Fuqua v. Ingersoll-Rand Co., 591 So.2d 486 (Ala. 1991) ; will accord the nonmoving party all reasonable favorable inferences from the evidence, Fuqua, supra, Aldridge v. Valley Steel Constr., Inc., 603 So.2d 981 (Ala. 1992) ; and will resolve all reasonable doubts against the moving party, Hurst, supra, Ex parte Brislin, 719 So.2d 185 (Ala. 1998).
" 'An appellate court reviewing a ruling on a motion for summary judgment will, de novo, apply these same standards applicable in the trial court. Fuqua, supra, Brislin, supra. Likewise, the appellate court will consider only that factual material available of record to the trial court for its consideration in deciding the motion. Dynasty Corp. v. Alpha Resins Corp., 577 So.2d 1278 (Ala. 1991), Boland v. Fort Rucker Nat'l Bank, 599 So.2d 595 (Ala. 1992), Rowe v. Isbell, 599 So.2d 35 (Ala. 1992).' "
Ex parte Turner, 840 So.2d 132, 135 (Ala. 2002) (quoting Ex parte Rizk, 791 So.2d 911, 912-13 (Ala. 2000) ).
Analysis
In Ex parte Cranman, supra, this Court restated the rule for determining when a State agent sued in his or her individual capacity is entitled to State-agent immunity:[2]
"A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis *782 of the claim against the agent is based upon the agent's
"(1) formulating plans, policies, or designs; or
"(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
"(a) making administrative adjudications;
"(b) allocating resources;
"(c) negotiating contracts;
"(d) hiring, firing, transferring, assigning, or supervising personnel; or
"(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
"(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
"(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
"Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
"(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
"(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."
792 So.2d at 405.
It is undisputed that, at the time of the accident, Venter was employed by the City as a firefighter. See City of Birmingham v. Brown, 969 So.2d 910, 916 (Ala. 2007) ("Immunity applies to employees of municipalities in the same manner that immunity applies to employees of the State."); see also Taylor v. Adams, 221 F.3d 1254, 1261 (11th Cir. 2000) (holding that Alabama's State-agent-immunity doctrine is applicable to municipal firemedic). In order to claim State-agent immunity, Venter and the City bore the initial burden of demonstrating that the wrongful-death claim based on Venter's alleged negligence arose from a function that would entitle Venter to immunity. Giambrone v. Douglas, 874 So.2d 1046, 1052 (Ala. 2003). Venter and the City assert in the petition that Venter is entitled to State-agent immunity under category (1) of the Cranman restatement because, they say, at the time of the accident, Venter was formulating plans and policies on behalf of the fire department by "patrolling" fire-rescue routes.
It is undisputed that, at the time of the accident, Venter was not responding to an emergency call. Rather, according to Venter's affidavit, he was "patrolling," a term he describes as "exploring and identifying fire rescue routes" and/or "looking for people in need of help or waiting for an emergency call." Venter and the City have not provided this Court with any caselaw from this State or any other jurisdiction in which immunity has been extended to a fireman who was engaged in routine patrolling when an alleged tort occurred. And, assuming, without deciding, that the act of "patrolling" could somehow be equated with formulating policy or procedure, Venter, by his own admission, was not *783 engaged in the act of patrolling when the accident occurred. Rather, Venter stated in his affidavit that, at the time of the accident, he was "returning" to the fire department "after riding around assigned territory within the City of Selma." Furthermore, in the narrative summary of undisputed facts in the summary-judgment motion, Venter and the City add that, in the process of returning to the fire department, Venter had stopped at a grocery store. Venter's action in returning to the fire department after an afternoon of patrolling, in conjunction with stopping at the grocery store, cannot be equated with performing a function that would entitle him to State-agent immunity; rather, such action can be characterized only as a routine action requiring the exercise of due care. See, e.g., Ex parte Coleman, 145 So.3d 751, 758 (Ala. 2013) ("It is undisputed that Coleman is a peace officer entitled to the immunity established in § 6-5-338(a)[, Ala. Code 1975,[3] ] and that at the time of the accident he was performing a function-responding to an emergency call-that entitles Coleman to immunity." (emphasis added)); DeStafney v. University of Alabama, 413 So.2d 391 (Ala. 1981) (rejecting immunity claim of individual defendant, an aide at the University's day-care center who allegedly allowed the plaintiff's child to fall off playground equipment, on basis that defendant was engaged in a function that clearly required the exercise of due care rather than difficult decision-making); cf. Gill v. Sewell, 356 So.2d 1196 (Ala. 1978) (holding the director of a work-release center sued for releasing a convicted felon who then shot the plaintiff was performing discretionary duties). Accordingly, because Venter has failed to demonstrate that, at the time of the accident, he was performing a function that would entitle him to State-agent immunity, he and the City are not entitled to the relief requested.
Conclusion
Based on the foregoing, we conclude that the trial court properly denied Venter and the City's motion for a summary judgment based on the defense of State-agent immunity.
PETITION DENIED.
Stuart, C.J., and Parker and Main, JJ., concur.
Murdock, J., concurs specially.
Bolin, Shaw, Wise, and Bryan, JJ., dissent.
MURDOCK, Justice (concurring specially).
I fully concur in the main opinion. Ex parte Cranman, 792 So.2d 392 (Ala. 2000), provides the foundation for much of the analysis in that opinion and in Ex parte Butts, 775 So.2d 173 (Ala. 2000), in which a majority of this Court adopted the Cranman restatement, by stating:
"The Constitution and cases construing it require that we not ignore § 13[, Ala. Const. 1901, guaranteeing every person a remedy for wrong,] in order to protect State agents from suit. However, the vulnerability of State agents to suit, if not constrained, could lead to excessive judicial interference in the affairs of coequal branches of government, contrary to § 43[, Ala. Const. 1901]....
"....
"... In applying the doctrine of separation of powers, we must recognize § 14[, Ala. Const. 1901,] as an expression of a strong public policy against the *784 intrusion of the judiciary into the management of the State while, at the same time, acknowledging that it speaks only to a prohibition of lawsuits against the State and does not mention lawsuits against individuals."
792 So.2d at 400-01 (emphasis added).
In this context, Cranman explained that, in applying State-agent immunity, it was important to strike a balance that would recognize the right of individuals to a remedy to the extent practicable while guarding against "the effect upon the rendition of governmental services if agents are inclined to indecision rather than risk personal liability." 792 So.2d at 404.
Under the circumstances presented in this case, I agree that the duty owed by Terrence Venter as the driver of a vehicle on a public roadway was no different than the duty of the driver in the illustration chosen in Cranman itself of a circumstance to which the doctrine of State-agent immunity would not apply. See Cranman, 792 So.2d at 404 (explaining the difference in legal consequences between an exercise of judgment in a personnel-related matter and "a decision by the driver of a pickup truck on how to drive through or around potholes while transporting prisoners").

The materials before us do not indicate whether the trial court ruled on the estate's motion for a continuance.

Although Cranman was a plurality decision, the restatement of law as it pertains to State-agent immunity set forth in Cranman was subsequently adopted by this Court in Ex parte Butts, 775 So.2d 173 (Ala. 2000).

Section 6-5-338(a) provides immunity to peace officers under certain circumstances. In Hollis v. City of Brighton, 950 So.2d 300, 309 (Ala. 2006), it was engrafted onto category (4) for which a State agent is immune under Cranman.