SELLERS, Justice.
Gloria Austill and Mary Ella Etheridge appeal from an order of the Mobile Circuit Court entering a summary judgment in *1169 favor of Dr. John Krolikowski, a senior medical examiner with the Alabama Department of Forensic Sciences ("the ADFS"). They challenge on appeal the order insofar as it denied their motion to compel certain discovery. We affirm.
I. Facts and Procedural History
William Marshall Etheridge ("the decedent"), who was 86 years old and under hospice care, died on December 9, 2012. Mary Ella and Gloria are the decedent's widow and daughter, respectively. The Baldwin County District Attorney's Office authorized the ADFS to perform an autopsy on the decedent based on potential civil and/or criminal litigation against the nursing home where the decedent resided before his death.[1] Dr. Krolikowski conducted the autopsy on the decedent, at which time the brain was saved and "fixed" in formalin.[2] Following the autopsy, the decedent's body was transported to Radney Funeral Home in Mobile. While the decedent's body was at the funeral home, Mary Ella and Gloria (hereinafter referred to collectively as "the plaintiffs") requested that the decedent's brain be referred to the University of Alabama Hospital in Birmingham ("UAB") for a neuropathological examination. The plaintiffs then learned that the brain had not been returned to the body; it had been retained by Dr. Krolikowski.
On April 13, 2015, the plaintiffs sued Dr. Krolikowski, individually,[3] as well as other fictitiously named parties, alleging that, following the autopsy, Dr. Krolikowski, without any compelling or legitimate reason, "harvested the decedent's entire brain without the family's permission and preserved it in his office for his own use." The plaintiffs sought compensatory and punitive damages based on claims of negligence and/or wantonness, trespass, conversion, breach of fiduciary duty, breach of implied contract, and the tort of outrage.
On May 22, 2015, Dr. Krolikowski filed a motion to dismiss the complaint on the basis of, among other things, State-agent immunity. The trial court granted the motion to dismiss as to the breach-of-implied-contract claim but denied the motion as to all other claims.
On July 7, 2015, the plaintiffs propounded written interrogatories and requests for production on Dr. Krolikowski. The parties, however, were unable to resolve a dispute as to whether Dr. Krolikowski was required to answer all discovery propounded or only discovery relevant to the issue of State-agent immunity. It was Dr. Krolikowski's position that the resolution of the State-agent-immunity issue was a prerequisite to full discovery. The plaintiffs ultimately withdrew their initial propounded discovery and substituted discovery they claimed related to the issue of State-agent immunity; Dr. Krolikowski responded in part and objected in part to the substituted discovery.
On December 9, 2016, Dr. Krolikowski filed a motion for a summary judgment *1170 pursuant to Rule 56(c), Ala. R. Civ. P., on the basis of State-agent immunity, citing Ex parte Wood, 852 So.2d 705, 712 (Ala. 2002) (noting that "the availability of the defense[ ] of ... State-agent immunity should be determined as a threshold issue in order to avoid the costs and expenses of trial where the defense is dispositive"). Dr. Krolikowski supported his motion for a summary judgment with, among other things, the sworn affidavits of Dr. Randy Lee Hanzlick, a board-certified forensic pathologist in Atlanta, Georgia, who had also served as Chief Medical Examiner of Fulton County, Georgia; Dr. Staci Turner, the regional Deputy Chief Medical Examiner for the ADFS in Mobile; Scott Belton, the Death Investigation Quality Manager for the ADFS; and Dr. Steven Frank Dunton, a senior medical examiner for the ADFS.
Dr. Hanzlick, who served as an expert in the case, inspected numerous documents, including (1) the ADFS death-investigation report; (2) the draft and final autopsy report, including the original audio dictation and its transcription; (3) the ADFS laboratory reports; (4) the UAB brain-examination report, chain-of-custody form, and an e-mail communication regarding disposition of the brain; (7) sections of Alabama law relating to coroners; and (8) sections of the ADFS Death Investigation Policy and Procedures Manual for medical examiners. Dr. Hanzlick stated in his affidavit that the decedent's brain was saved to facilitate diagnosis and to address potential legal issues because the autopsy had been requested by the district attorney as a result of questions surrounding the decedent's death. Dr. Hanzlick explained in his affidavit that, in general, there is sometimes a need to retain, after autopsy, an entire organ such as the brain so that a specific study, beyond the routine autopsy, may be conducted. Dr. Hanzlick stated that the decision whether to retain a brain or the organ is a professional discretionary decision and that the medical examiner's discretion must be accommodated inasmuch as the performance of an autopsy is a medical procedure and the medical examiner must have necessary information to develop diagnoses and to formulate expert opinions. He further stated that there is "no requirement in Alabama or most other states that family permission is needed to perform an autopsy or retain needed specimens." In summary, Dr. Hanzlick opined:
"Dr. Krolikowski made a prudent and professionally appropriate decision to retain the brain. He was aware that the case may be complicated and involved potential allegations of possible neglect, abuse, and maltreatment with potential legal ramifications, and that there was concern about a somewhat sudden deterioration in mental status with possible degenerative neurological disease that could be relevant to family members. Retaining the brain made it available for thorough examination after fixation and also made it available for examination by other specialist[s] or experts, if needed. It is my opinion that Dr. Krolikowski's retention of the brain was reasonable and appropriate professional procedure in the case in question, and the lack of family permission to save the brain and lack of notification to the family that the brain had been retained following the autopsy and not returned with the body are not in violation of any law or policy."
Dr. Turner stated in her affidavit that she supervised all medical examiners at the ADFS's Mobile office, including Dr. Krolikowski, and that there was no evidence indicating that Dr. Krolikowski had preserved the decedent's brain "in his office for his own use" as the plaintiffs alleged. Dr. Turner further stated that Dr. Krolikowski was not required to notify a *1171 decedent's family member that an organ, including a brain, had been retained following an autopsy, nor was he required to obtain permission from a decedent's family member to retain an organ, including a brain, following an autopsy. Dr. Turner specifically stated that Dr. Krolikowski's retention of the decedent's brain was a professional discretionary decision allowed under the ADFS Death Investigation Policy and Procedures Manual.
Belton stated in his affidavit that the ADFS Death Investigation Policy and Procedures Manual provided medical examiners the discretionary authority to retain an organ, including a brain, when conducting an autopsy and that a medical examiner was not required by ADFS policy and procedure to obtain permission from the decedent's family to retain an organ, including a brain. Belton stated that, in this case, the district attorney authorized the autopsy because of the potential for a criminal investigation into the decedent's death, as well as the potential for civil litigation because there were indications that the decedent's family intended to sue the nursing home where the decedent resided immediately before his death.
Finally, Dr. Dunton provided an affidavit stating that the circumstances of the case, including suspicion that the decedent suffered from Parkinson's disease and the possibility of civil litigation, could have easily prompted a medical examiner such as Dr. Krolikowski to retain the brain. He further stated that permission from the next of kin to retain an organ such as the brain following an autopsy is neither necessary nor required in the State of Alabama. Dr. Dunton concluded that, from a medical standpoint, the decedent received a thoughtful, professional, and thorough examination by Dr. Krolikowski and that, had he failed to harvest and preserve the decedent's brain for later examination, Dr. Krolikowski may have been subject to accusations concerning inadequate job performance.
The plaintiffs did not oppose the summary-judgment motion on the merits. Rather, acting pro se, they filed a motion to compel, asserting that the discovery sought was crucial to "the issues" in the case. The trial court set a hearing on the motion for a summary judgment but subsequently postponed the hearing pending resolution of the immunity issue. The plaintiffs responded by filing a motion, pursuant to Rule 56(f), Ala. R. Civ. P., to continue any ruling on the summary-judgment motion until Dr. Krolikowski fully responded to the outstanding discovery. The plaintiffs submitted with their Rule 56(f) motion the sworn affidavit of Gloria, who stated, in pertinent part:
"I cannot adequately respond to [Dr. Krolikowski's] motion for Summary Judgment until he properly responds to my [interrogatories]. For instance, interrogatory number 9 specifically asks [Dr. Krolikowski] to '[P]lease describe in detail any and all tests, procedures, examination, analysis, etc., performed by the Defendant on the brain of the decedent.' This interrogatory was asked to determine whether [Dr. Krolikowski] followed the policies and procedures set forth in [the ADFS Death Investigation Policy and Procedures Manual]. It is my belief upon a review of the records that portions of the brain of my deceased father were improperly taken by [Dr. Krolikowski] and still remain in the possession of [Dr. Krolikowski], which would directly violate the policies and procedures he was/is required to follow...."
(Emphasis added.)
On April 21, 2017, following a hearing, the trial court entered an order denying *1172 the plaintiffs' motion to compel,[4] concluding that the discovery sought was not relevant to the immunity issue then before the court. The trial court noted in its order that the parties had had more than ample opportunity to engage in discovery relating to the issue of immunity.[5] Accordingly, the trial court entered a summary judgment in favor of Dr. Krolikowski on the basis of State-agent immunity under Ex parte Cranman, 792 So.2d 392 (Ala. 2000).[6] This appeal followed.
II. Standard of Review and Applicable Law
A. Summary Judgment
" 'A summary judgment is proper and must be affirmed on appeal if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.' Hughes v. Hertz Corp., 670 So.2d 882, 885 (Ala. 1995) (citing Rule 56, Ala. R. Civ. P.). '[T]he summary-judgment stage is generally the appropriate point in litigation for determining [State-agent] immunity questions,' Cornner v. Mitchell, 886 So.2d 816, 816 (Ala. Civ. App. 2003) (Pittman, J., dissenting), 'following appropriate discovery.' Ex parte Alabama Dep't of Mental Health & Mental Retardation, 837 So.2d 808, 813-14 (Ala. 2002).
" ' Rule 56(f) protects a party opposing a motion for summary judgment if the party states reasons why he cannot present essential facts.' Starks v. Commercial Union Ins. Co., 501 So.2d 1214, 1216 (Ala. 1987). Proper application of Rule 56(f) requires the nonmoving party to demonstrate by affidavit, Herring v. Parkman, 631 So.2d 996, 1002 (Ala. 1994), 'that matters it seeks by further discovery are "crucial" to its case.' Smith v. Yanmar Diesel Engine Co., 855 So.2d 1039, 1042 (Ala. 2003) (citing Stallworth v. AmSouth Bank, 709 So.2d 458, 468 (Ala. 1997) ); see also McCullar v. Universal Underwriters Life Ins. Co., 687 So.2d 156, 161 (Ala. 1996) (nonmovant at summary-judgment stage has the 'burden of proving how information from [documents sought in discovery] is crucial to her case')...."
Vick v. Sawyer, 936 So.2d 517, 521-22 (Ala. 2006).
B. State-agent Immunity
"State-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities." Ex parte Hayles, 852 So.2d 117, 122 (Ala. 2002). In Ex parte Cranman, this Court restated the law governing State-agent immunity:
"A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis *1173 of the claim against the agent is based upon the agent's
"....
"(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner
"....
"Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
"....
"(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."
792 So.2d at 405.
Additionally,
"[t]his Court has established a 'burden-shifting' process when a party raises the defense of State-agent immunity. Giambrone v. Douglas, 874 So.2d 1046, 1052 (Ala. 2003). In order to claim State-agent immunity, a State agent bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity. Giambrone, 874 So.2d at 1052 ; Ex parte Wood, 852 So.2d 705, 709 (Ala. 2002). If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority. Giambrone, 874 So.2d at 1052 ; Wood, 852 So.2d at 709 ; Ex parte Davis, 721 So.2d 685, 689 (Ala. 1998). 'A State agent acts beyond authority and is therefore not immune when he or she "fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist." ' Giambrone, 874 So.2d at 1052 (quoting Ex parte Butts, 775 So.2d 173, 178 (Ala. 2000) )."
Ex parte Estate of Reynolds, 946 So.2d 450, 452 (Ala. 2006).
III. Discussion
The plaintiffs argue that the trial court exceeded its discretion in granting Dr. Krolikowski's motion for a summary judgment and also in denying their motion to compel discovery, which, they say, is crucial to the issue whether Dr. Krolikowski is entitled to State-agent immunity. Specifically, the plaintiffs argue that their Rule 56(f) motion and Gloria's affidavit in support of the motion were sufficient to warrant a continuance of the summary-judgment hearing in order for Dr. Krolikowski to respond to the outstanding discovery relating to the State-agent-immunity issue.
Initially we note that the plaintiffs, from the inception of this lawsuit up until the filing of their Rule 56(f) motion and supporting affidavit, alleged that Dr. Krolikowski, following the autopsy, retained the decedent's brain without permission and without any compelling reason. The plaintiffs conceded in their filings that the autopsy itself was not at issue,[7] i.e., that the allegations in their complaint were based on what happened after the autopsy-the retention of the decedent's brain without permission and without a compelling reason. The affidavits submitted by Dr. Krolikowski in support of his summary-judgment *1174 motion were based on those specific allegations. The plaintiffs, however, by way of their Rule 56(f) motion and supporting affidavit, changed course, stating that, although the affidavits submitted in support of the motion for a summary judgment suggest that Dr. Krolikowski's harvesting and retention of the decedent's brain is consistent with typical evidence-collection practices used by the ADFS at autopsy, the specifics of the procedures Dr. Krolikowski allegedly followed were not provided. The plaintiffs state that "[t]he interrogatories from the plaintiffs to [Dr. Krolikowski] which [Dr. Krolikowski] refuses to answer are routine standard questions and pertain to routine autopsy procedures." (Emphasis added.) Stated differently, the plaintiffs now claim that the specifics of the procedures Dr. Krolikowski used in performing the autopsy are "crucial" to the issue whether he was acting in accordance with the ADFS policies and procedures, whether he acted beyond his authority, and whether he failed to discharge his duties in the manner required to be entitled to State-agent immunity. We disagree.
The discovery the plaintiffs claim is crucial to oppose Dr. Krolikowski's summary-judgment motion-i.e., the specifics of all tests, procedures, and examinations performed on the decedent's brain in conjunction with the autopsy-is not dispositive of whether Dr. Krolikowski was acting within the scope of his discretionary authority as a medical examiner when he retained the decedent's brain allegedly without the family's permission and without a compelling reason. Rather, that discovery is related to the performance of the autopsy, which, as the trial court concluded, is irrelevant to the issue of immunity.
It is clear from Dr. Krolikowski's notes and the autopsy report that he performed nothing more than a routine autopsy on the decedent's brain:
"The brain is fixed. The brain weighs 1410 grams. The leptomeninges are thin, delicate and transparent and overlie a normal amount of clear cerebrospinal fluid. The epidural and subdural space is normal, and the sagittal sinus is unobstructed. The cerebral hemispheres are symmetric with a normally developed gyral pattern without areas of softening or discoloration. The vessels at the base of the brain are of normal caliber and distribution and unobstructed. The cranial nerves are symmetric. All central structures are midline, and there is no herniation noted."
The affidavit testimony submitted by Dr. Krolikowski in support of his summary-judgment motion indicates that the compelling reason for retaining the brain after the autopsy was to facilitate diagnosis and to address potential legal issues that might arise as the plaintiffs had suggested to the district attorney. The ADFS case-correspondence report confirms that the decedent's death "[was] not normally a case that is a medical examiner's case but due to the daughter's strong request for an autopsy, [the district attorney] requested the autopsy" and that "the daughter remained adamant about suing the nursing home for her father's death." Moreover, the ADFS Death Investigation Policy and Procedures Manual specifically states that the determination by a medical examiner to retain an organ such as a brain is discretionary:
"As each organ is individually examined and dissected, the [medical examiner] should take small samples of each organ for formalin fixed tissue stock to include, at a minimum, brain, heart, lungs, liver, kidneys, spleen, pancreas, thyroid, and adrenals. Depending upon the nature of the case the [medical examiner] using *1175 professional judgment may save additional tissue samples or whole organ. The retained samples/organ are placed in a plastic container containing formalin that has been labeled with a [laboratory information-management system ('LIMS') ] generated barcode label that identifies the case number, date, a name of the decedent, and name of the [medical examiner]. The stock cup will be stored in secure evidence storage areas. The storage of these items should be reflected in LIMS."
(Emphasis added.) The affidavit testimony further reflects that there is no law, nor is there any ADFS policy, requiring a medical examiner to seek permission from a decedent's family to retain an organ such as a brain. As stated by Dr. Hanzlick, whether to inform the decedent's family that an organ such as a brain is being retained is a discretionary matter-the family's permission to retain such an organ is not required.
Based on the undisputed materials submitted by Dr. Krolikowski in support of his motion for a summary judgment, we conclude that the trial court did not exceed its discretion in denying the plaintiffs' motion to compel discovery of items it concluded were irrelevant to the issue of State-agent immunity. See Ex parte Ocwen Fed. Bank, FSB, 872 So.2d 810, 813 (Ala. 2003) ("Discovery matters are within the trial court's sound discretion, and this Court will not reverse a trial court's ruling on a discovery issue unless the trial court has clearly exceeded its discretion."). Accordingly, because the plaintiffs do not make any argument concerning the correctness of the summary judgment on the merits, we affirm the summary judgment for Dr. Krolikowski.
IV. Conclusion
Because the plaintiffs failed to demonstrate, by way of their Rule 56(f) motion and affidavit in support thereof, that the discovery they requested was crucial to the issue of State-agent immunity, the trial court properly denied their motion to compel. Additionally, because the plaintiffs did not challenge the merits of the trial court's summary judgment in favor of Dr. Krolikowski, the summary judgment is affirmed.
AFFIRMED.
Stuart, C.J., and Wise, J., concur.
Parker and Shaw, JJ., concur in the result.

According to the ADFS Death Investigation Policy and Procedures Manual, "[a] case will be accepted for investigation by a Medical Examiner's office when authorized by ... any District Attorney ... for the purpose of the investigation of unlawful, suspicious or unnatural deaths and crimes." In this case, it appears that Mary Ella and Gloria pressured the district attorney to request on autopsy on the ground that the decedent's death was suspicious.

According to Dr. Staci Turner, the regional Deputy Chief Medical Examiner for the ADFS in Mobile, a brain is "fixed" by storing it in a formalin-filled container, supplied by ADFS for brain retention, to create the optimum conditions for further examination.

The plaintiffs state that they sued Dr. Krolikowski only in his individual capacity and not his official capacity.

Although the trial court's order denied only the plaintiffs' motion to compel, it is undisputed that the plaintiffs' substituted discovery, specifically interrogatory number 9, had become the subject of the motion to compel.

We note that the plaintiffs commenced this action in April 2015 and that the case was originally assigned, without objection, to the court's expedited case-management system, which is designed to dispose of a case within 12 months. The case was not disposed of within 12 months. Rather, the trial judge granted the plaintiffs' request for additional time in which to conduct discovery, allowed the plaintiffs more than four months to respond to Dr. Krolikowski's motion for a summary judgment, and twice reset the hearing on the summary-judgment motion. Moreover, Dr. Krolikowski states that he has produced at least 469 documents and has answered those of the plaintiffs' interrogatories that directly relate to the issue of immunity.

Cranman was a plurality opinion; the restatement of law as it pertains to State-agent immunity as set forth in Cranman was subsequently adopted by this Court in Ex parte Butts, 775 So.2d 173 (Ala. 2000).

Dr. Krolikowski notes that the plaintiffs filed their complaint over two years after the autopsy was performed and that any claim concerning the autopsy itself would be barred by the applicable statute of limitations.